Lancaster Development, Ltd., an Illinois Corporation, Plaintiff-Appellee, v. Village of River Forest, Illinois, a Municipal Corporation, and Howard Denney, Building Commissioner, Village of River Forest, Illinois, Defendants-Appellants.

Gen. No. 51,856.

First District, Fourth Division.

June 16, 1967.

 

Charles L. Michod, of Chicago, for appellants.

Taxman and Farber, Fredric N. Richman and Arthur Abraham, of Chicago, for appellee.

MR. JUSTICE DRUCKER delivered the opinion of the court.

Defendants appeal from an order that two ordinances adopted by the Village of River Forest be declared null and void. One of them was an amendatory zoning ordinance, adopted on August 8, 1966, which the court found to be unreasonable and discriminatory because it constituted spot zoning. The other was an interim ordinance, adopted on June 20, 1966, which prohibited the issuance of a building permit for three months after the question of amending the zoning ordinance was referred to the Zoning Board of Appeals. In its order the court also directed that the plaintiff be issued a building permit.

In April and May of 1966 plaintiff, an Illinois corporation engaged in real estate development, contracted to purchase for $195,000 [1] three consecutive parcels of land, one contiguous to the next, which were located on the east side of the 1000 block of Bonnie Brae Place in River Forest, Illinois. Each parcel was improved with a single-family dwelling. The subject block is bounded by Harlem

---

[1] Other expenses incurred by the plaintiff included: $1,500 attorney fees in connection with the acquisition of the real estate; $85 for a survey; and $225 on account of demolition expense. Plaintiff had also become liable for architectural fees in the amount of $4,500 of which $1,300 had been paid.

Avenue on the east, Augusta Boulevard on the south, Bonnie Brae on the west and Thomas Street on the north. On the parcels of land which it purchased plaintiff proposed to construct a condominium, forty-five feet high and containing thirty-nine units. The proposed condominium thus was in complete compliance with the zoning at the time the contracts to purchase the land were executed. At that time (and since the inception of zoning in River Forest in 1922) the subject block was in an area zoned as a "B" multiple-family use district which permits the erection of apartments, condominiums and the like with a density of fifty families per acre and a building height of forty-five feet. In 1959 the Village of River Forest adopted a comprehensive zoning ordinance which affirmed that classification. Under that ordinance the blocks north of Augusta Boulevard (a heavily travelled street) having Harlem Avenue as their eastern border (which includes the subject block) were zoned as a "B" multiple-family district, with certain exceptions for industrial uses. Those blocks south of Augusta with Harlem Avenue bordering on the east were zoned for single-family dwellings, also with certain exceptions for industrial uses. On June 13, 1966, the corporate authorities of River Forest received a petition from certain residents of the area who objected to the construction of the proposed condominium in which they requested that the zoning of the block containing these parcels of land be referred to the Zoning Board of Appeals for amendment to a new zoning "AA" two-family classification. The matter was referred to the Zoning Board as requested. On June 17 plaintiff entered into a contract for the demolition of the three homes. On June 20, at a special meeting, the corporate authorities of River Forest adopted an interim ordinance which prohibited the issuance of building permits for a period of three months after a question of amending the zoning ordinance had been referred to the Zoning Board of Appeals. This ordinance was enacted

without notice and without a hearing having been conducted.

On July 12, 1966, plaintiff applied for a building permit to construct the condominium, at which time plans and specifications were submitted to the Village. Also on July 12, the Village issued permits for demolition of the houses located on the subject property. The Zoning Board, after giving proper notice, held a hearing on July 13, 1966, on the proposed zoning amendment and recommended that the present "B" multiple-family zoning should remain in effect for the block in question. In support of its conclusion the Zoning Board made various findings, including the following:

The present "B" zoning of the subject block does have a real and substantial relationship to the public health, safety, comfort, morals, and general welfare of the village and does not unreasonably diminish or impair existing land values within the established surrounding area, nor does the zoning impair adequate supply of light and air to other properties. No evidence was introduced at the hearing which would require the rezoning of the subject block for the public good. To the contrary, the land is suitable for the "B" zoning it has had for 44 years.

If the rezoning were accomplished, there would be spot zoning by a new use district which would not exist in any other part of the village.

In recommending that the present "B" multiple-family zoning be retained, the Board stated:

Creation of a new zone classification and its application to this single block might lead to serious problems elsewhere in the village unless preceded by a careful study of its effect upon the village as a whole.

> Testimony in favor of the proposal [that the "B" zoning be changed] was largely in the form of opinions unsupported by sufficient qualified expert testimony.
>
> The property upon which the proposed condominium is to be erected was purchased on binding contracts after Mr. Dick [President of plaintiff] was assured by a representative of the village that the proposed structure was legal under the existing zoning ordinance.

On August 8, at its regular monthly meeting, the corporate authorities of the Village rejected the recommendation of the Zoning Board and enacted an ordinance to adopt on August 23 the proposed "AA" two-family zoning for that block.

OPINION

A. **Interim Ordinance.**

■■ The interim ordinance, which was enacted by the Village on June 20, 1966, subsequent to the execution of the contracts to purchase the three parcels of land, prohibited the issuance of a building permit for a period of three months after a question of amending the zoning ordinance had been referred to the Zoning Board of Appeals. In effect, by this ordinance the Village sought to suspend its valid zoning ordinance. In Phillips Petroleum Co. v. City of Park Ridge, 16 Ill App2d 555, 149 NE2d 344, the court held to be null and void a similar effort to suspend a valid zoning ordinance. In that case, Phillips Petroleum entered into a contract to purchase certain real estate in Park Ridge, Illinois. Phillips then applied for a building permit for the construction and operation of a retail filling station on the property, which was a use consistent with the zoning then in effect. The building commissioner referred the matter to the city council for

consideration at its meeting, at which meeting the council passed a resolution which established a commission to review and study zoning within the city and ordered the building department to refuse to issue any permits for gasoline service stations prior to the completion of the investigation. At page 563 the court stated:

> In effect, the city council by this resolution attempted to suspend the operation of the zoning ordinance then in effect in the city. Had the city council passed an ordinance instead of a resolution it would still be ineffective. There is no provision in the zoning sections of the Cities and Villages Act which permits the city council, either by ordinance, resolution or otherwise, to suspend properly enacted zoning ordinances. The only way in which the city council could have altered the existing zoning ordinance would be by passing an ordinance in strict compliance with the requirements of the said statute.

██ In the instant case, the attempt by the Village of River Forest to suspend the operation of its valid zoning ordinance, without compliance with the statutory requisites for amending its zoning ordinance, is therefore null and void. Therefore, that portion of the order declaring this ordinance to be null and void, and also directing that plaintiff be issued a building permit, is affirmed.

B. **Amendatory Zoning Ordinance of August 8, 1966.**
██ ██ We believe that the amendatory zoning ordinance enacted on August 8, 1966, by which only the subject block was rezoned to the new "AA" two-family classification, constituted spot zoning and therefore it was null and void. For an ordinance to constitute spot zoning, two requisites must coexist: First, a change of zone applicable only to a small area and, second, a change which is out of harmony with comprehensive planning for the good of the community. Reskin v. City of Northlake, 55 Ill App

2d 184, 204 NE2d 600. In the instant case, prior to the amendatory ordinance, the blocks south of Augusta Boulevard with Harlem Avenue as their eastern border were zoned "A" single-family. Those blocks north of Augusta, also with Harlem as their eastern border (which includes the subject block), were zoned "B" multiple-family. Augusta Boulevard, being a heavily travelled artery, is a natural dividing line for the two districts. In directing the amendatory zoning ordinance towards only one of the several blocks north of Augusta Boulevard—and in fact towards the first block, which borders the heavily travelled Augusta Boulevard—the Village of River Forest clearly has attempted to enact a zoning change applicable only to a small area.

█ Furthermore, in recommending that the present "B" zoning be retained, the Zoning Board found that the proposed change in the zoning classification of the subject block to "AA" was out of harmony with comprehensive planning for the good of the community. The trial judge agreed. In attempting to justify the proposed zoning change the Village of River Forest contends that it desired to maintain the residential character of the neighborhood. However, we note that the subject block already contains an 8-apartment building. Additionally, the blocks north of the subject block were, and still are, zoned for multiple-family dwellings. We would also point out that in another neighborhood of the Village zoned for multiple-family dwellings, on June 13, 1966, a variation was granted in the zoning ordinance so as to permit the construction of an apartment building considerably taller than that customarily permitted under the "B" classification.

Therefore, that portion of the order declaring the amendatory ordinance of August 8, 1966, to be null and void as being unreasonable and discriminatory because it constitutes spot zoning is affirmed.

**Holding on Appeal.**

We find that both of the ordinances in question are null and void. Therefore the judgment of the trial court is affirmed.

Affirmed.

ENGLISH, P. J. and McCORMICK, J., concur.