JOSEPH J. COLLURA vs. TOWN OF ARLINGTON.

Middlesex. February 6, 1975. — June 3, 1975.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, & HENNESSEY, JJ.

Zoning, Validity, Amendment of by-law or ordinance, Interim provision, Building permit.

A provision adopted by a town in conformity with the procedure prescribed by G. L. c. 40A, § 6, for amending zoning by-laws and under a town meeting warrant article proposing an amendment of the town's zoning by-law, whereby construction of apartment buildings was prohibited for a limited period in a zoning district wherein otherwise such buildings were allowed, constituted an amendment of the zoning by-law. [883-884]

A town has authority under G. L. c. 40, §§ 2, 3, to enact "interim zoning" provisions effective only for a limited time. [883-887]

It was lawful for a town, which had recently undergone a great increase in apartment construction and was in the process of reviewing its zoning plan, to enact an amendment of its zoning by-law imposing a moratorium for a limited period on the construction of apartment buildings. [887-888]

Under G. L. c. 40A, § 11, an amendment of a zoning by-law imposing a moratorium for a limited time on construction of apartment buildings prohibited construction of such a building under a building permit applied for prior to but issued after the first notice of the planning board hearing on the amendment. [888-889]

BILL IN EQUITY filed in the Superior Court on March 15, 1973.

The suit was heard by Donahue, J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

Philip J. McCarthy, Special Town Counsel, for the town of Arlington.

Edward T. Bigham for the plaintiff.

REARDON, J.   This bill for declaratory relief brings to
us questions concerning the validity and effect of a
purported amendment to the zoning by-law of the town
of Arlington which imposed a two-year moratorium on
the construction of apartment buildings in certain areas
of the town.   The plaintiff is a landowner in Arlington
who, in November, 1972, applied to the town's building
inspector for a permit to construct a forty-unit, six-story
apartment building on his realty.   Under the zoning
provisions then in effect, construction of such a building
in the district in which the realty was located was
permissible.   On December 28, 1972, following the
publication of proper notices on December 14 and 21,
1972, a public hearing was held in Arlington to consider
an article to be proposed at the March, 1973, town
meeting which would temporarily suspend construction of
apartment buildings in certain districts of the town.   The
plaintiff, whose land was within one of these districts,
attended the December hearing.   The permit he had
applied for was issued to him on January 15, 1973, but
was accompanied by a notation by the building inspector
that issuance was "with the warning that the Arlington
Redevelopment Board has published a notice of a hearing
for a zoning amendment that if properly adopted will
affect this bldg. permit in accordance with General Laws
Chapter 40A, Section 11."[1]   No construction under the
permit has taken place to this date.

The proposed article, art. 57, was adopted by a two-
thirds vote of the town meeting on March 19, 1973, and
was subsequently approved by the Attorney General and
properly published.   In pertinent part, art. 57 provides
as follows:   "To see if the Town will vote to amend the
Zoning By-Law by inserting the following new Section
9A immediately following the present Section 9:

---

[1] The parties agreed that "[t]he Arlington Redevelopment Board is
and was at all times material to this 'bill' the Planning Board" in the
town.

"*Section 9A.*    Restrictions in Moratorium District #1.

"In Moratorium District #1, no new building or part thereof shall be constructed for use as an apartment house or for apartments or for any use in an Industrial District in Moratorium District #1 for a period of two years from the date of approval of this section by the Massachusetts Attorney General's office, or September 1, 1975, whichever date is the longer period of time. Whereas the Town of Arlington is in the process of updating its Comprehensive Plan, it is desired to protect certain parts of the Town from ill-advised development pending the final adoption of a revised Comprehensive Plan and a moratorium on the issuance of building permits for the construction of apartment houses in a Moratorium District in excess of two families is hereby in effect for a period of time described above."

The town contends that since the plaintiff's building permit was issued after the first notice of a public hearing on art. 57, the provisions of G. L. c. 40A, § 11, apply to invalidate use of the permit in violation of the zoning by-law as amended by art. 57. The trial judge ruled in favor of the plaintiff on the ground that art. 57 did not amend the zoning by-law within the meaning of the statute and also because in any event art. 57 is prospective in operation only. He thus upheld the validity of the building permit and ruled that construction might begin in accordance with the terms of the building permit. Although the judge did not pass on the constitutionality of art. 57, the plaintiff argues that the town lacks the authority to enact a by-law temporarily suspending the operation of an existing zoning by-law.

We cannot agree with the judge's conclusion that art. 57 did not constitute an amendment to the zoning by-law. The new § 9A of the by-law is an example of what has been called "interim zoning." Anderson, Am. Law of Zoning, § 5.15 (1968). Rathkopf, Zoning and Planning, c. 8A (3d ed. 1974). Though it lacks the same degree of permanence typically found in zoning laws, see

*Enos* v. *Brockton,* 354 Mass. 278, 281 (1968), it effectively reclassified the district to a more restrictive use, if only for a temporary period. Regardless of the time period, it is still a zoning provision. See *Kline* v. *Harrisburg,* 362 Pa. 438, 455-456 (1949). "Indeed, all zoning regulations are in a sense 'interim' because they can be amended at any time, after proper notice and subject to certain limitations." *Lebanon* v. *Woods,* 153 Conn. 182, 187 (1965). Since the effect of § 9A was to rezone the district for a two-year period, it must be deemed an "amendment" to the existing zoning by-law. It is significant that art. 57 referred to the new section as an amendment to the zoning by-law and that the town followed to the letter the statutory procedure set out in G. L. c. 40A, § 6, for amending a zoning by-law.[2] Plainly the town did everything it could to enact the interim measure as an amendment to the zoning by-law. Whether the town has the authority to do so is another matter, but if that power exists then the adoption of art. 57 was manifestly an exercise of that power. To say as the judge did that art. 57 did not amend the zoning by-law within the contemplation of The Zoning Enabling Act is to decide, sub silentio, that an interim zoning provision is beyond the scope of the act. We thus turn to an examination of the fundamental question of the town's constitutional and statutory authority.

The basic source of a town's zoning power is G. L. c. 40A, § 2, which is a broad delegation of authority to cities and towns phrased in general language. We have

---

[2] There is some argument by the plaintiff that the town failed to satisfy fully the procedural requirements for amending a zoning by-law as set out in the town's own by-law. The plaintiff bases this claim on § 5, par. 2, of the zoning by-law, which refers to giving notice by registered mail to abutters of land referred to in any petition for a proposed amendment to the by-law. However, even a cursory glance at the provision reveals that the notice by registered mail requirement applies only to amendments proposed by petition and not to proposals initiated by the town itself.

not yet had occasion, as we have now, to consider whether the authority to adopt interim zoning provisions can be implied from that general language. Cf. *Tra-Jo Corp.* v. *Town Clerk of Methuen*, 366 Mass. 846, 847 (1974), dismissing as moot a challenge to a moratorium on the construction of residential building units in new subdivisions pending revision of a zoning by-law and a zoning map in accordance with a comprehensive plan. But the principles governing judicial review of a town's zoning provisions are clear. In general we have said that " [t]he extensive powers, granted by G. L. c. 40A to cities and towns, are not to be narrowly interpreted." *Decoulos* v. *Peabody*, 360 Mass. 428, 429 (1971). Further, " [t]he presumption is in favor of the ordinance and we will not refuse its enforcement unless there is a showing beyond reasonable doubt of conflict with the Constitution or the enabling statute." *Rosko* v. *Marlborough*, 355 Mass. 51, 53 (1968). *Caires* v. *Building Commr. of Hingham*, 323 Mass. 589, 594 (1949). *Lanner* v. *Board of Appeal of Tewksbury*, 348 Mass. 220, 228 (1964). *Turnpike Realty Co. Inc.* v. *Dedham*, 362 Mass. 221, 233 (1972), cert. den. 409 U. S. 1108 (1973). The test is whether there is "any substantial relation between the amendment and the furtherance of any of the general objects of the enabling act," *Lanner* v. *Board of Appeal of Tewksbury, supra,* and the burden is on the plaintiff to show that there is not. *Kaplan* v. *Boston*, 330 Mass. 381, 384 (1953). *Moss* v. *Winchester*, 365 Mass. 297, 299 (1974).[3]

---

[3] A second, independent repository of local zoning power may exist by virtue of § 6 of the Home Rule Amendment, art. 89 of the Amendments to the Constitution of the Commonwealth. See *Board of Appeals of Hanover* v. *Housing Appeals Comm. in the Dept. of Community Affairs*, 363 Mass. 339, 360 (1973). The only limit on this power is that it not be exercised in a manner which frustrates the General Laws of the Legislature. *Ibid.* But since the town in this case relies on G. L. c. 40A, § 11, which is a part of The Zoning Enabling Act, we confine our discussion here to whether art. 57 falls within the scope of amendments to a zoning by-law under the enabling act.

We are not persuaded that the plaintiff has met that burden. The weight of authority is that reasonable interim zoning provisions may be enacted within the scope of a general zoning enabling act, without reliance on specific statutory authorization for interim ordinances. *Steel Hill Dev. Inc.* v. *Sanbornton,* 469 F. 2d 956, 962 (1st Cir. 1972). *Miller* v. *Board of Pub. Works of Los Angeles,* 195 Cal. 477, 496 (1925), error dism. 273 U. S. 781 (1927). *Lebanon* v. *Woods,* 153 Conn. 182, 187 (1965). *Monmouth Lumber Co.* v. *Ocean,* 9 N. J. 64, 75 (1952). *Rubin* v. *McAlevey,* 54 Misc. 2d (N. Y.) 338, 340-341 (1967), affd. 29 App. Div. 2d (N. Y.) 874 (1968). See anno. 30 A. L. R. 3d 1196 (1970); Anderson, Am. Law of Zoning, § 5.15 (1968); Rathkopf, Zoning and Planning, c. 8A, § 3 (3d ed. 1974). Cases cited by the plaintiff to the contrary involved interim zoning measures enacted without compliance with the statutory procedures for amending zoning ordinances. *Phillips Petroleum Co.* v. *Park Ridge,* 16 Ill. App. 2d 555, 563 (1958). See *Alexander* v. *Minneapolis,* 267 Minn. 155, 158-159, and n. 2 (1963); *Kline* v. *Harrisburg,* 362 Pa. 438, 457 (1949). See also *Lancaster Dev. Ltd.* v. *River Forest,* 84 Ill. App. 2d 395, 399-400 (1967). By contrast, in adopting art. 57, the town complied strictly with the requirements of G. L. c. 40A, § 6, for amending zoning by-laws. We believe that the objectives of an interim provision such as the one here are consistent with the purposes of zoning. Interim zoning can be considered a salutary device in the process of plotting a comprehensive zoning plan to be employed to prevent disruption of the ultimate plan itself. As this court has stated, " [I]t is proper for a town to review its zoning regulations, to take into account its probable future development, and to plan for the welfare of its inhabitants, present and future." *Lanner* v. *Board of Appeal of Tewksbury,* 348 Mass. 220, 229 (1964). *Wilbur* v. *Newton,* 302 Mass. 38, 42 (1938). *Lamarre* v. *Commissioner of Pub. Works of Fall River,* 324 Mass. 542, 546 (1949). *Cohen* v.

*Lynn,* 333 Mass. 699, 704 (1956). The orderly process of interim zoning allows the issues to have the benefit of full public debate, at the same time protecting the affected area from unwise exploitation prior to agreement and formulation of new zoning restrictions which may be more restrictive. It is noteworthy that, since the procedures under G. L. c. 40A, § 6, were complied with, the landowner whose property is subject to the interim provision in this case is no worse off than if the town had simply rezoned the area to exclude apartment buildings in the traditional manner, with the intent of again amending the by-law in two years to reflect a new comprehensive plan. At the least, with the adoption of an interim provision he is made aware that a new plan is in the offing and is thus able to participate in the debate over what that new plan should contain.

In light of the authority which we believe can be found in The Zoning Enabling Act, the particular provision adopted by the town is permissible. First, it is significant that § 9A does not prohibit all uses of realty within the moratorium district but is primarily directed at construction of apartment buildings. This is an allowable restriction under G. L. c. 40A, §§ 2, 3. *Moss v. Winchester,* 365 Mass. 297, 299 (1974). See *Euclid* v. *Ambler Realty Co.* 272 U. S. 365, 394-395 (1926); *Fanale* v. *Borough of Hasbrouck Heights,* 26 N. J. 320, 325-326 (1958). There was evidence that in the last decade almost sixty-eight per cent of all dwelling units constructed in Arlington were apartment units, as compared to seventeen per cent in the previous decade, so that the restriction was aimed at an interim solution to a matter of genuine planning significance. Second, the interim amendment was adopted in the circumstance that the town was in fact in the process of reviewing its comprehensive plan,[4] and is limited to a two-year period

---

[4] The plaintiff disputes this fact but the evidence is clear that a study of the comprehensive plan had been recommended and initiated prior to the date the plaintiff applied for his building permit.

of applicability. We cannot say that two years is an unreasonable length of time for the town to undertake and complete a thorough review of its comprehensive plan. See *Campana* v. *Clark,* 82 N. J. Super. 392 (1964); *Rubin* v. *McAlevey,* 54 Misc. 2d (N. Y.) 338, 340-341 (1967), affd. 29 App. Div. 2d (N. Y.) 874 (1968); Anderson, Am. Law of Zoning, § 5.15, at 275, 277 (1968).

The plaintiff argues that even if the town could properly adopt this interim provision, the amendment operates prospectively only and, hence, does not apply to his building permit issued January 15, 1973. Article 57 was adopted by the town on March 19, 1973, and by G. L. c. 40, § 32, it could not take effect until subsequently approved by the Attorney General. However, the permit was issued after the first notice of hearing before the planning board on the proposed art. 57. Having concluded that art. 57 constituted an amendment to the zoning by-law pursuant to The Zoning Enabling Act, we therefore apply the provisions of G. L. c. 40A, § 11, to the facts. Section 11 states that where the permit is issued after such notice the permit does not justify violation of the subsequently adopted amendment provided that the requisite procedures for adoption of the amendment are followed without unreasonable delay. *Doliner* v. *Planning Bd. of Millis,* 343 Mass. 1, 6-7 (1961). See *Smith* v. *Board of Appeals of Brookline,* 366 Mass. 197, 202 (1974). The mere filing of an application prior to notice gives the landowner no vested rights. *Caputo* v. *Board of Appeals of Somerville,* 330 Mass. 107, 111 (1953). Consequently, the plaintiff is not entitled to construct an apartment building on his property since that property is subject to the restrictions imposed by § 9A.[5] If the result seems harsh it is no

---

[5] In light of the view we take of the merits of the plaintiff's bill, we have no occasion to consider the town's arguments respecting possible procedural infirmities in the bringing of this suit.

different from that which would obtain had the town adopted a permanent restriction on the construction of apartments in the district in which the plaintiff's land is located, and the plaintiff concedes that the town could have enacted a by-law to that effect. It follows that the decree must be reversed and the plaintiff's bill dismissed.

*So ordered.*