ARNOLD BERNHARD AND COMPANY, INC. *v.* PLANNING AND ZONING COMMISSION OF THE TOWN OF WESTPORT (12387)

PETERS, HEALEY, PARSKEY, SHEA and GRILLO, Js.

Argued May 4—decision released August 7, 1984

*Alan R. Spirer,* with whom, on the brief, was *Evelyn Leka,* for the appellant (defendant).

*Joseph M. Brophy,* with whom, on the brief, were *Marylouise S. Black* and *John G. Betar, Jr.,* for the appellee (plaintiff).

PETERS, J. The principal issue on this appeal is whether the town of Westport is authorized by statute to enact a zoning moratorium. The plaintiff, Arnold Bernhard and Company, Inc., appealed from the decision of the defendant, Westport planning and zoning commission (commission), imposing a nine month moratorium on the acceptance and granting of applications for business development within a fourteen acre section of the Westport business district in which the plaintiff owns a piece of property. The plaintiff sought declaratory and injunctive relief to invalidate the moratorium, and to direct the commission to approve the plaintiff's site plan and to issue the necessary permits for construction of the plaintiff's proposed office building.[1] The trial court, *Jacobson, J.,* sustained the plaintiff's zoning appeal and ordered the commission to act on the plaintiff's application in accordance with the zoning regulations in effect prior to the moratorium. Upon the granting of certification, the commission has appealed to this court from the judgment sustaining the plaintiff's zoning appeal.

The relevant facts are undisputed. The plaintiff owns a parcel of land in Westport in an area that had been zoned as a business district. In September, 1973, the commission approved the plaintiff's site plan for the construction of an office building on the property, subject to several conditions. The plaintiff did not comply with all of the conditions then imposed, and did not construct the office building. On July 13, 1978, almost five years after the plaintiff's site plan had been approved,

---

[1] During the pendency of the zoning appeal, the plaintiff sought a writ of mandamus directing the Westport zoning enforcement officer to issue a zone permit on the basis of the plaintiff's 1973 site plan approval. On April 20, 1979, the trial court, *Herman, J.,* denied the writ on the grounds that the plaintiff had failed to comply with the original conditions of approval and had made unauthorized revisions in the plan. The plaintiff has not appealed this ruling.

the commission, after due notice and a proper hearing, enacted an amendment to its regulations, effective July 20, 1978, providing for a nine month moratorium on business development in a portion of the business district encompassing the plaintiff's property.[2] The plaintiff appealed from the adoption of the regulation on August 8, 1978.

While the zoning appeal was pending, on April 20, 1979, the defendant commission proposed a zoning amendment for the moratorium district which, if applied to the plaintiff's property, would prevent approval of the proposed site plan. The proposed amendment rezoned a portion of the moratorium area as a corporate park in which office buildings would be limited to 20,000 square feet. The plaintiff's site plan proposed a building of 45,000 square feet. After the plaintiff unsuccessfully attempted to enjoin the enactment of the zoning amendment pending the resolution of the validity of the moratorium or until it received a zone permit, the more restrictive zoning regulation took effect on November 5, 1979.[3]

In its zoning appeal, the plaintiff claimed that: (1) the zoning enabling statutes conferred no authority on the commission to enact a moratorium; (2) the application of the moratorium to only a small portion of the busi-

---

[2] Section 24-13 of the Westport Zoning Regulations provided: "No future applications involving any changes in Zone for business uses, Site Plan Reviews for business development activities affecting property in that portion of the Business District located along the north side of Post Road West between the Norwalk Town line and Sylvan Road North shall be accepted, considered or acted upon by the Westport Planning and Zoning Commission during the nine month period from the date of adoption to April 30, 1979."

[3] The trial court, *Saden, J.*, denied the plaintiff's request for a permanent injunction on the grounds that the plaintiff had failed to prove either that it was likely to succeed on the merits of the zoning appeal or that, but for the moratorium, it was entitled to site plan approval. The plaintiff did not appeal from the trial court's ruling.

ness district violated the statutory requirement that regulations be uniform within each district; and (3) the imposition of the moratorium confiscated its property. The trial court, *Jacobson, J.*, sustained the appeal on the first ground, holding that the commission lacked any statutory authority to enact the challenged regulation. Accordingly, the court ordered the commission to consider the plaintiff's application under the less restrictive regulations that were in effect at the time the revised application was submitted. The trial court did not address the other grounds on which the plaintiff claimed the moratorium invalid.

On appeal to this court the commission claims that General Statutes § 8-2[4] does authorize the imposition of a zoning moratorium for a reasonable period to protect

---

[4] General Statutes § 8-2 provides: "REGULATIONS. The zoning commission of each city, town or borough is authorized to regulate, within the limits of such municipality, the height, number of stories and size of buildings and other structures; the percentage of the area of the lot that may be occupied; the size of yards, courts and other open spaces; the density of population and the location and use of buildings, structures and land for trade, industry, residence or other purposes, and the height, size and location of advertising signs and billboards. Such zoning commission may divide the municipality into districts of such number, shape and area as may be best suited to carry out the purposes of this chapter; and, within such districts, it may regulate the erection, construction, reconstruction, alteration or use of buildings or structures and the use of land. All such regulations shall be uniform for each class or kind of buildings, structures or use of land throughout each district, but the regulations in one district may differ from those in another district, and may provide that certain classes or kinds of buildings, structures or use of land are permitted only after obtaining a special permit or special exception from a zoning commission, planning commission, combined planning and zoning commission or zoning board of appeals, whichever commission or board the regulations may, notwithstanding any special act to the contrary, designate, subject to standards set forth in the regulations and to conditions necessary to protect the public health, safety, convenience and property values. Such regulations shall be made in accordance with a comprehensive plan and shall be designed to lessen congestion in the streets; to secure safety from fire, panic, flood and other dangers; to promote health and the general welfare; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue

the planning process. The commission claims further that even if the moratorium were invalid, the trial court erred in granting the plaintiff relief because (1) the expiration of the moratorium rendered the case moot; and (2) the plaintiff's appeal from the decision to adopt the moratorium was an inappropriate procedural vehicle for considering the commission's action with respect to the plaintiff's later filed zoning application. Because we agree that the commision was statutorily empowered to adopt a moratorium, we find error in the judgment sustaining the plaintiff's zoning appeal. Accordingly, we remand the case to the trial court for further proceedings concerning the remaining issues raised in the plaintiff's appeal.

I

We must first address the commission's claim that the expiration of the moratorium on April 30, 1979, has

concentration of population and to facilitate the adequate provision for transportation, water, sewerage, schools, parks and other public requirements. Such regulations shall be made with reasonable consideration as to the character of the district and its peculiar suitability for particular uses and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout such municipality. Zoning regulations may be made with reasonable consideration for the protection of historic factors and for the protection of existing and potential public surface and ground drinking water supplies and may provide that proper provision be made for sedimentation control, and the control of erosion caused by wind or water. Such regulations may also encourage energy-efficient patterns of development, the use of solar and other renewable forms of energy, and energy conservation. The regulations may also provide for incentives for developers who use passive solar energy techniques, as defined in subsection (b) of section 8-25, in planning a residential subdivision development. The incentives may include, but not be limited to, cluster development, higher density development and performance standards for roads, sidewalks and underground facilities in the subdivision. Such regulations shall not prohibit the continuance of any nonconforming use, building or structure existing at the time of the adoption of such regulations. Any city, town or borough which adopts the provisions of this chapter may, by vote of its legislative body, exempt municipal property from the regulations prescribed by the zoning commission of such city, town or borough; but unless it is so voted municipal property shall be subject to such regulations."

rendered the case moot. "It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow." *CEUI* v. *CSEA,* 183 Conn. 235, 246, 439 A.2d 321 (1981); *Accurate Forging Corporation* v. *UAW Local No. 1017,* 189 Conn. 24, 26, 453 A.2d 769 (1983); *State Farm Life & Accident Assurance Co.* v. *Jackson,* 188 Conn. 152, 156, 448 A.2d 832 (1982); *Rosnick* v. *Zoning Commission,* 172 Conn. 306, 308–10, 374 A.2d 245 (1977); *Reynolds* v. *Vroom,* 130 Conn. 512, 515, 36 A.2d 22 (1944).

In *Rosnick* v. *Zoning Commission,* supra, we held that the expiration of a similar zoning moratorium had rendered moot the plaintiff's appeal, which challenged the validity of the moratorium. This case differs from *Rosnick* because in that case no application was then pending before the zoning commission, while in this case the plaintiff submitted an application for site plan review during the moratorium period. In the absence of the moratorium, the plaintiff would have been entitled to a decision on its application within sixty-five days or the application would have been approved as a matter of law. General Statutes §§ 8-3 (g), 8-7d (b); see *Vartuli* v. *Sotire,* 192 Conn. 353, 358–59, 472 A.2d 336 (1984). The commission may not defeat that statutory right by imposing an invalid moratorium.

The plaintiff submitted its revised application on April 12, 1979, and the sixty-five day period lapsed on June 16, 1979. The plaintiff's property was not rezoned to prohibit the proposed office building until November 5, 1979. A judgment invalidating the moratorium would therefore entitle the plaintiff to have its application considered in accordance with the zoning regu-

lations that were in effect when the decision should have been made.[5] The trial court concluded correctly that the case was not moot.

## II

The commission's principal claim is that the trial court erred in concluding that the moratorium was unauthorized by statute. It is well established that the town of Westport and its agency, the defendant planning and zoning commission, may "exercise only such powers as are expressly granted to [the town], or such powers as are necessary to enable it to discharge the duties and carry into effect the objects and purposes of its creation." *Baker* v. *Norwalk,* 152 Conn. 312, 314, 206 A.2d 428 (1965); *Board of Police Commissioners* v. *White,* 171 Conn. 553, 559, 370 A.2d 1070 (1976); *Langer* v. *Planning & Zoning Commission,* 163 Conn. 453, 457–58, 313 A.2d 44 (1972); *Avonside, Inc.* v. *Zoning & Planning Commission,* 153 Conn. 232, 236, 215 A.2d 409 (1965). General Statutes § 8-2[6] delegates broad authority to municipalities to enact local zoning regulations. That statute provides in part that a "zoning commission may divide the municipality into districts of such number, shape and area as may be best suited to carry out the purposes of this chapter; and, within such districts, it may regulate the erection, construction, reconstruction, alteration or use of buildings or structures and the use of land. . . . Such regulations shall be made in accordance with a comprehensive plan and shall be designed to lessen congestion in

---

[5] Public Acts 1978, No. 78-104 amended General Statutes § 8-3 (g), effective October 1, 1979, by adding the following language: "A site plan may be modified or denied only if it fails to comply with requirements already set forth in the regulations." We need not decide, in the context of this appeal, whether this statutory amendment confers on property owners any rights in the zoning regulations in existence at the time that an application for site plan review is filed. Compare *Marmah, Inc.* v. *Greenwich,* 176 Conn. 116, 120–21, 405 A.2d 63 (1978).

[6] See footnote 4, supra, for the full text of General Statutes § 8-2.

the streets; to secure safety from fire, panic, flood and other dangers; to promote health and the general welfare; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population and to facilitate the adequate provision for transportation, water, sewerage, schools, parks and other public requirements. Such regulations shall be made with reasonable consideration as to the character of the district and its peculiar suitability for particular uses and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout such municipality."

The trial court held that the powers granted by § 8-2 do not encompass the adoption of a moratorium. The court noted that while the statute expressly authorizes, inter alia, the creation of zones, the regulation of lot size and the prescription of building height and area as mechanisms for land control, it is silent about land planning through the temporary suspension of development. The court reasoned that because the temporary cessation of growth was not a land management technique within the contemplation of the legislature which enacted the statute in 1949, the imposition of a moratorium could not be among the powers necessarily implied by the statutory grant. We believe that the trial court read the statute too narrowly.

As the trial court recognized, the purpose of the Westport moratorium was to stop the rapid expansion of business uses for a limited time in order to enable the defendant commission to evaluate the needs of the community and formulate plans for rational growth in the future. Section 24-13 of the Westport Zoning Regulations provided that for a period of nine months no applications would be accepted, considered or granted for business development within the specified area. Under the moratorium, the affected area remained within the business district. It was not reclassified to

prohibit business uses. Residential development was permitted to continue during the moratorium period. The moratorium is similar in purpose and effect to other forms of "interim" or "stop-gap" zoning, which seek to impose temporary controls on development pending the adoption or amendment of a comprehensive zoning plan. See, e.g., comment, "Stop-Gap and Interim Legislation, a Device to Maintain the Status Quo of an Area Pending the Adoption of a Comprehensive Zoning Ordinance or Amendment Thereto," 18 Syracuse L. Rev. 837 (1967); 3 Rohan, Zoning and Land Use Controls (1984) §§ 22.01, 22.02; Tondro, Connecticut Land Use Regulation (1979) pp.162–66.

This court has not previously had occasion to consider whether a zoning moratorium is substantively authorized by § 8-2. In *Lebanon* v. *Woods,* 153 Conn. 182, 186–88, 215 A.2d 112 (1965), however, we upheld the validity under § 8-2 of "interim" zoning regulations, prescribing minimum lot sizes, frontage requirements and minimum living areas, which were enacted for the purpose of maintaining the status quo pending the formulation of a comprehensive plan. We rejected the defendant's claim that the regulations were invalid because there was no explicit statutory authority to adopt "interim" regulations. Although in *State ex rel. Brodie* v. *Powers,* 168 Conn. 512, 514, 362 A.2d 884 (1975), we disapproved a zoning moratorium, we did so on the ground that it had been adopted without notice and a hearing.

*Lebanon* v. *Woods* is consistent with the decisions of other state courts that have construed similar general grants of zoning power to permit the use of moratoria and similar interim measures as tools for the control of development. *A. Copeland Enterprises, Inc.* v. *New Orleans,* 372 So. 2d 764 (La. Ct. App. 1979) (moratorium); *Collura* v. *Arlington,* 367 Mass. 881, 329 N.E.2d 733 (1975) (moratorium); *Deal Gardens, Inc.* v. *Board*

*of Trustees of Loch Arbour,* 48 N.J. 492, 226 A.2d 607 (1967) (temporary zoning); *Monmouth Lumber Co.* v. *Ocean Township,* 9 N.J. 64, 87 A.2d 9 (1952) (temporary zoning); *Golden* v. *Planning Board of Ramapo,* 30 N.Y.2d 359, 285 N.E.2d 291, 334 N.Y.S.2d 138 (1972) (phased development over eighteen year period with building conditioned on availability of city services); *Gayland* v. *Salt Lake County,* 11 Utah 2d 307, 358 P.2d 633 (1961) (temporary zoning); *Walworth County* v. *Elkhorn,* 27 Wis. 2d 30, 133 N.W.2d 257 (1965) (zoning freeze); see generally 3 Rohan, Zoning and Land Use Controls (1984) § 22.03 [2]; but see *Downey* v. *Sioux City,* 208 Iowa, 1273, 227 N.W. 125 (1929) (temporary zoning); *Alexander* v. *Minneapolis,* 267 Minn. 155, 125 N.W.2d 583 (1963) (moratorium); 3 Rohan, supra, § 22.03 [2].

*Collura* v. *Arlington,* supra, presented a factual situation closely parallel to the case now before us. There, the town of Arlington had enacted a zoning amendment that created a moratorium district in which the construction of apartment buildings was prohibited for a period of two years. The regulation had been enacted in accordance with all of the procedural requirements of the Zoning Enabling Act. In upholding the validity of the moratorium under the general zoning authority, the court noted that the amendment "effectively reclassified the district to a more restrictive use, if only for a temporary period." Id., 884. The court reasoned that "[t]he orderly process of interim zoning allows the issues to have the benefit of full public debate, at the same time protecting the affected area from unwise exploitation prior to agreement and formulation of new zoning restrictions which may be more restrictive. It is noteworthy that, since the [statutory] procedures [for amending the zoning regulations] were complied with, the landowner whose property is subject to the interim provision in this case is not worse off than if the town

had simply rezoned the area to exclude apartment buildings in the traditional manner, with the intent of again amending the by-law in two years to reflect a new comprehensive plan. At the least, with the adoption of an interim provision he is made aware that a new plan is in the offing and is thus able to participate in the debate over what that new plan should contain." *Collura* v. *Arlington,* supra, 887.

Other courts have likewise relied on the procedural regularity with which interim ordinances have been enacted and the reasonableness of the period during which uses are restricted to sustain interim zoning regulations. See, e.g., *Deal Gardens, Inc.* v. *Board of Trustees of Loch Arbour,* supra, 500; *New Jersey Shore Builders* v. *Ocean,* 128 N.J. Super. 135, 138, 319 A.2d 255 (1974). Conversely, when courts have held interim regulations invalid they have most frequently done so on the grounds upon which we did in *State ex rel. Brodie* v. *Powers,* supra, that they were not enacted in conformity with statutory procedures; *Anderson* v. *Pima County,* 27 Ariz. App. 786, 787–88, 558 P.2d 981 (1976); *Lancaster Development, Ltd.* v. *River Forest,* 84 Ill. App. 2d 395, 400, 228 N.E.2d 526 (1967); *Phillips Petroleum Co.* v. *City of Park Ridge,* 16 Ill. App. 2d 555, 563, 149 N.E.2d 344 (1958); *Alexander* v. *Minneapolis,* supra, 158–59; *Kline* v. *Harrisburg,* 362 Pa. 438, 457, 68 A.2d 182 (1949); or that the restrictions remained in effect for an unreasonable length of time. *Alexander* v. *Minneapolis,* supra, 159 n.3 (nine years); *Lake Illyria Corporation* v. *Town of Gardiner,* 43 App. Div. 2d 386, 388–89, 352 N.Y.S.2d 54 (1974) (four repeated one year enactments); see also Tondro, Connecticut Land Use Regulation (1979) pp. 162–67.

In the case before us, the moratorium was neither procedurally flawed nor substantively unreasonable. The plaintiff has conceded that the regulation was enacted in accordance with the procedural require-

ments of General Statutes § 8-3, and the trial court expressly so found. The moratorium was reasonably limited in scope since it did not prevent all development but applied only to business uses. Using the same procedure, the commission could have rezoned the affected portion of the district to permit only residential uses. The moratorium was limited in time since it extended only for a nine month period.[7] In these circumstances, we hold that the moratorium was within the power delegated to the local zoning authority by § 8-2.

We also reject the trial court's holding that the moratorium was invalid because the enabling statute, § 8-2, contains no standards limiting the length or scope of a moratorium. In adopting or amending zoning regulations, the commission acts in a legislative capacity. *Parks* v. *Planning & Zoning Commission,* 178 Conn. 657, 660, 425 A.2d 100 (1979); *A. P. & W. Holding Corporation* v. *Planning & Zoning Board,* 167 Conn. 182, 184, 355 A.2d 91 (1974). "Acting in such legislative capacity, the local board is free to amend its regulations 'whenever time, experience, and responsible planning for contemporary or future conditions reasonably indicate the need for a change. . . . The discretion of a legislative body, because of its constituted role as formulator of public policy, is much broader than that of an administrative board, which serves a quasi-judicial function.' *Malafronte* v. *Planning & Zoning Board,* [155 Conn. 205, 209, 230 A.2d 606 (1967)]." *Parks* v. *Planning & Zoning Commission,* supra.

Although the regulations enacted by a zoning commission must include detailed standards for the grant or denial of zoning approval; *Powers* v. *Common Council,* 154 Conn. 156, 160–61, 222 A.2d 337 (1966); we perceive no obstacle to the General Assembly's broad

---

[7] Although the trial court relied in part on the possibility that the moratorium would be extended, that consideration was speculative. In fact the moratorium expired on April 30, 1979, in accordance with its terms.

delegation of legislative power to local zoning boards under the terms of § 8-2. The plaintiff has asserted no claim that the terms of the particular moratorium at issue in this case gave insufficient guidance as to its scope and conditions. The trial court therefore erred in concluding that the moratorium was invalid for lack of legislative standards.

Our determination that the moratorium was not beyond the powers delegated by § 8-2 does not dispose of the plaintiff's zoning appeal. Because the plaintiff raised other grounds for invalidating the regulation that the trial court did not reach, those claims must now be litigated.

There is error, the judgment is set aside, and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.