[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs have appealed the adoption of an amendment to the zoning regulations of the Town of Winchester establishing the Highland Lake District on November 13, 1989. The District surrounds Highland Lake in all but two locations and extends 1,000 feet from the shore line.
There were a number of issues the regulations addressed including (1) drainage into Highland Lake. Urbanization and paving over of land areas contributes to runoff and drainage into the lake, decreasing water quality. The terrain at Highland Lake is steeply sloped toward the water in most areas and already intensely developed; (2) additional car, boat and pedestrian congestion that would result if multifamily development were allowed at the lake; (3) incompatibility of multifamily housing with the existing lake residential community; (4) substantial support from current residents for regulations limiting further development (petition of 500 signatures); (5) the importance of improving erosion sedimentation control practices. These considerations were referred to more generally as goals of protecting Highland Lake and its watershed, and appropriately regulating the area in the fact of increasing development pressures to prevent more intense development that might damage the watershed and the lake.
The adoption of the Highland Lake District was the culmination of a process that consumed at least four or five years, and initially began with a moratorium to consider possible regulation, in March of 1989 a citizen's group submitted a proposed zone change. This proposal was CT Page 10190 considered and amended at least twice. A proposed Highland Lake District was presented at a public hearing on September 25, 1989. The plaintiff, Thomas Flaherty spoke at that hearing and indicated a number of reasons for his opposition. The commission ultimately amended its proposal and included a number of suggestions made by the plaintiff.
Mr. Flaherty represented that his property was approximately 500 acres and was located in a RU1 zone. He indicated that a 1,000 foot boundary would cover approximately 20 percent of the property, leaving 80 percent outside the HL District but within the RU1 zone. The changes adopted in the Highland Lake District were not too different from the existing zone so far as the plaintiff's property is concerned. The minimum acreage before and after the zone change was 40,000. square feet. The minimum front, rear and side yards and lot coverage remain the same. Most of the residential uses remained the same. Changes concerned increased application of the soil and sedimentation control measures. The new district also eliminated multifamily uses and added setbacks of 75 feet from the lake and 25 feet from watercourses and wetlands.
 I
The plaintiffs are aggrieved by virtue of the fact that they own, legally or beneficially, property which is affected by the new regulation and also land which abuts and is within 100 feet from the proposed Highland Lake District zone in accordance with Conn. Gen. Stat. 8-8. This aggrievement is as a matter of law.
A party claiming aggrievement other than as a matter of law must demonstrate a specific, personal and legal interest in the subject matter of the [Commission's] decision. Goldfeld v. Planning Zoning of Greenwich,3 Conn. App. 172, 175, 486 A.2d 646 (1985). The plaintiffs also claim aggrievement by virtue of the fact that the new Highland Lake District Zone, as adopted, substantially and adversely affects the value of their property by drastically reducing the residential density permitted under the preexisting zones, eliminating certain residential and non-residential rights completely, prohibiting rights to cluster residential units, placing severe restrictions on siting of dwellings within building lots and decreasing, in substantial fashion, the value of the interest of plaintiffs' property and the ability of plaintiffs to utilize their property in a reasonable manner.
 II
There are general principles of law applicable to the adoption of zoning districts and the change of zoning districts. The planning and zoning commission is a local authority acting in a legislative capacity on rules for its own community.
 So long as it appears that an honest judgment has been reasonably and fairly exercised by the commission after full hearing, courts CT Page 10191 should be cautious about disturbing its decision . . . Courts cannot substitute their judgment for the wide and liberal discretion vested in the local zoning authority when it is acting in its described legislative powers. . . . The courts allow zoning authorities this discretion in determining the public need and the means of meeting it, because the local authority lives close to the circumstances and conditions which create the problem and shape the solution.
Byington v. Zoning Commission, 162 Conn. 611, 613, 295 A.2d 553 (1973) (citations omitted).
The Winchester Planning and Zoning Commission was creating a new zone specifically designed to deal with the problems of Highland Lake. Those problems included congestion, high development, drainage, traffic and safety issues, and development pressures. The commission was attempting to deal with those problems through the regulation that was adopted. Courts are required to indulge every legal presumption and every reasonable inference of fact in favor of the validity of police power legislation. The existence of facts justifying the enactment are presumed. Blue Sky Bar, Inc. v. Stafford, 4 Conn. App. 261, 266, 493 A.2d 908 (1988). "The party challenging the enactment bears the burden of overcoming this presumption." Id. The record in this case amply supports the need for a change in the regulations as they affected Highland Lake. All of the individuals appearing at the public hearing supported a change of some type, including the plaintiff. In amending its zoning regulations, the commission acts in its legislative capacity:
 Acting in such legislative capacity, the local board is free to amend its regulations `whenever time, experience, and responsible planning for contemporary or future conditions reasonably indicate the need for a change.' Arnold Bernhard Co. v. Planning Zoning Commission, 194 Conn. 152, 164, 479 A.2d 801 (1984) (citations omitted).
 III
The plaintiffs raise numerous issues in their appeal, most of which the court finds insufficient in law. The plaintiffs claim that the establishment of the Highland Lake District amounts to a taking by reason of the minimum square footage of the lot size. That lot size existed before the passage of the new zone.
It has been stated a number of times that "`[t]he highest and best use of any particular parcel is not a controlling purpose of zoning, nor is the maximum possible enrichment of a particular landowner.'" Hyatt v. Zoning Board of Appeals, 163 Conn. 379, 383, 311 A.2d 77 (1972) (quoting Damick v. Planning Zoning Commission, 158 Conn. 78, 83, 256 A.2d 428 (1969)). "Indeed, the maximum possible enrichment of a particular developer is not the controlling purpose of zoning." Sonn v. Planning Commission,172 Conn. 156, 161, 374 A.2d 159 (1976). CT Page 10192
The controlling issue is not whether zoning regulations might result in some restrictions in the use of certain property, but whether the owner has been deprived of all reasonable use. Regulations may result in the restriction of use of property and not be deemed confiscatory or unreasonable. State v. Hillman, 110 Conn. 92, 105, 147 A. 294 (1929). It is only when an ordinance permanently restricts the use of land for any reasonable purpose that the regulation goes beyond the permissible limits and amounts to "practical confiscation". Brecciaroli v. Commissioner of Environmental Protection, 168 Conn. 349, 355-56, 362 A.2d 948 (1975). So long as a portion of a subject property may be used for some permitted use there is no "practical confiscation". See, e.g., Chevron Oil Co. v. Zoning Board of Appeals, 170 Conn. 146, 152, 365 A.2d 387 (1976).
The plaintiff's brief makes reference to pre-existing lots which were undeveloped and smaller than the 40,000 square foot minimum listed in section 4.a. of he Highland Lake zone. These nonconforming parcels had been nonconforming since at least 1983 when the majority of the lake area had been rezoned to RUl. Only two small sections of the lake area had been previously zoned R-2 and R-3.
The plaintiffs raise a general complaint of the effect of the regulation on property in general. "The validity of [a zoning ordinance is] tested by its effect upon the [complaining] plaintiffs under the facts of [the] case. . . ." Troiano v. Zoning Commission of the Town of North Bradford, 155 Conn. 265, 269, 231 A.2d 536 (1967). Mr. Flaherty owns 500 acres of land, of which approximately 15 to 20 percent is located within the Highland Lake zone. As far as can be determined by the facts presented, the plaintiff both before and after the zone change, would be allowed to build approximately 100 single family homes within the zone. This does not amount to a deprivation of "all reasonable use" of the land.
 A
It is undisputed that the regulations describe the following district:
 . . . The boundaries of the Highland Lake District are and shall be and include all land situated in Residence Districts Rural Districts, and specifically excluding Commercial Districts and Industrial District, lying in, under and upon Highland Lake and within an area bounded by a line one thousand (1,000) feet distant from and parallel to the high water line of the waters of Highland Lake upon its shoreline.
Record (52).
This is a definite description. If the property was previously located in a residence or a Rural District, and is located within one thousand (1,000) feet of the high water line of the Highland Lake, it is located within the HL District, to the extent that it lies within one thousand CT Page 10193 (1,000) feet.
 B
One major change to the RU1 District represented by the HL District is the elimination of special exceptions for multifamily dwelling. One of the stated line purposes of the adoption of the regulation was to reduce development. The adoption of the zone which allows only single family dwellings is clearly reasonably related to that objective.
The plaintiffs state that multifamily use would allow more "flexible" housing arrangements. That might be more flexible for the developer, but it was not something the commission was required under its general powers to include in the regulations.
 C
While section 8-2 requires that zoning regulations encourage the development of housing opportunities for all citizens of the municipality, these regulations must be "consistent with soil types, terrain and infrastructure capacity." Conn. Gen. Stat. 8-2. The regulations of the Town of Winchester allow multifamily housing in all other residential and rural districts of the entire community by special permit, with the exception of the HL District. The Commission could legally conclude that the HL District, because of its soil types, terrain and infrastructure capacity was not suitable for a multifamily construction. The allowance of single family dwellings does not discourage housing opportunities for citizens of the municipality.
 D
Any zone that increases restrictions is likely to result in an increase in nonconforming uses. Such a change does not render the regulation invalid. In this case those individuals residing in zones previously designated as R-2 and R-3 may find that their lots are not nonconforming, or may be simply more nonconforming than under previous zoning regulations, This situation might almost also exist in a limited sense with some of the increased setback requirements dealing with the lake, streams and wetlands.
These restrictions do not apply to the plaintiffs' land, and technically cannot be raised by him under Troiano v. Zoning Commission of the Town of North Branford, supra. The courts have specifically approved the zone changes which increase restrictions and thereby incidentally increase nonconformities on some lots. For example, in Young v. Town Planning and Zoning Commission, 151 Conn. 235, 196 A.2d 427 (1963), the court specifically approved a change in zone, referring to it as "up zoning" that increased the required minimum area for lots from 40,000 to 80,000 square feet.
E CT Page 10194
Section 4a.2 of the newly adopted regulations establishes its boundaries in the terms of setback lines of 75 feet from Highland Lake and 25 feet from wetlands and streams. The planning and zoning commission had no statutory authority to regulate activities in or around a wetland.
Chapter 440 of the Conn. Gen. Statutes establishes a comprehensive series of laws for the protection of wetlands and watercourses. In these statutes, the Legislature delegated to the Commissioner of Environmental Protection, a state agency, the specific authority to regulate inland wetlands and watercourses throughout the State. Conn. Gen. Stat. 22a-36. The Commissioner is directed and has the exclusive authority to adopt regulations, grant permits and establish boundaries. Conn. Gen. Stat.22a-39. To assist in carrying out and effectuating the purposes of the statutes, the legislature also requires municipalities to establish an inland-wetlands agency. Conn. Gen. Stat. 22a-42(c). The municipal agency has no specific delegation of power. Its regulations and boundaries must be in accordance with and approved by the Commissioner. Conn. Gen. Stat.22a-42a(b). The municipal agency is merely an enforcement arm of the state. The state has therefore pre-empted this area of the law such that the planning and zoning commission nor any other local agency has jurisdiction to regulate activities in a wetland as has been attempted in this case.
The law of pre-emption is well settled in this state. "`A local ordinance is pre-empted by a state statute whenever the legislature has demonstrated an intent to occupy the entire field of regulation on the matter . . . or . . . whenever the local ordinance irreconcilably conflicts with the statute.'" Shelton v. Commissioner, 193 Conn. 506, 517,479 A.2d 208 (1984) (quoting Dwyer v. Farrell, 193 Conn. 7,14, 475 A.2d 257 (1984). The statutory scheme is clear. Section 22a-36 spells out the legislative intent behind this statute.
 It is. . .the purpose of sections 22a-36 to 22a-45, inclusive, to protect the citizens of the state by making provisions for the protection, preservation, maintenance and use of the inland wetlands and watercourses. . .by providing an orderly process to balance the need for the economic growth of the state and the use of its land with the need to protect its environment and ecology in order to forever guarantee to the people of the state, the safety of such natural resources for their benefit and enjoyment and for the benefit and enjoyment of generations yet unborn.
The state has regulated this entire field and delegated exclusive power to regulate inland-wetland and watercourses to the Commissioner, not to any local authority. This preemption is further evidenced by the statutory framework. Unlike Chapter 124, the planning and zoning statutes where the legislature directly empowers a municipality to regulate specific areas of land use, Chapter 440, the Inland-Wetland Statutes, has no such direct delegation. The delegation for wetland regulation is specifically granted CT Page 10195 to the Commissioner. Conn. Gen. Stat. 22a-39(f) and 22a042(e). The planning and zoning commission of Winchester may not regulate the wetland areas.
The defendants claim that the town has co-existing power pursuant to Section 8-2, i.e. the power to regulate flooding, sedimentation and erosion and its general police power. The Supreme Court has held that to determine the powers and authority delegated to a commission, the proper search is for authority in the statutes, not for a statutory prohibition. See Avonside, Inc. v. Zoning and Planning Commission, 153 Conn. 232, 236,215 A.2d 409 (1965).
Not only does Chapter 440 permit the municipal regulation of wetlands, but in 1987 the act was amended to "require municipal regulation" of wetlands. As stated in the act:
 . . .[I]t is hereby declared to be the public policy of the state to require municipal regulation of activities affecting the wetlands and watercourses within the territorial limits of the various municipalities or districts. (emphasis added)
Conn. Gen. Stat. 22a-42 (a).
More importantly, the same act states that for purpose of fulfilling this public policy of the state, an inland wetlands commission established by the municipality, is the only agent for the licensing of regulated activities. The statute states in pertinent part:
 . . . For the purposes of this section, the board or commission authorized by the municipality or district, as the case may be, shall serve as the sole agent for the licensing of regulated activities.(emphasis added).
Conn. Gen. Stat. 22a-42 (c).
In the Town of Winchester, the designated agent is the Inland Wetlands and Watercourses Commission of the town, not the planning and zoning commission. As just quoted, the wetlands commission, not the planning and zoning commission is the sole agent for licensing activities in wetlands
Finally, section 22a-42 (e) clearly limits the jurisdiction over wetlands of town boards or commission other than the designated inland wetlands agency. This provision allows the adoption of other ordinances or regulations but they must either "embody" or "conform" to regulations promulgated by the inland wetlands agency. Section 22a-42 (e) reads in part:
 Municipal or district ordinances or regulations may embody any regulations promulgated hereunder, in whole or in part, or may consist of other ordinances or regulations in conformity with regulations promulgated hereunder.
CT Page 10196
Id.
Accordingly, a municipal zoning commission has no general jurisdiction to govern wetlands but, in addition to the matters specifically allowed by Section 8-2, may only embody in its regulations those regulations enacted by an inland wetlands agency or may adopt regulations which conform to those already promulgated by the inland wetlands agency.
 IV
At its hearing of November 13, 1989, Mr. David Cappabianca, the chairman of the Winchester Inland Wetlands and Watercourses Commission testified that the Winchester wetlands regulations provide for a 50 foot regulated area setback from wetlands and 150 foot regulated area setback from watercourses. A board member emphasized that these were not building setbacks, but rather regulated areas.
In other words, if a person wishes to build within 50 feet of or on a wetlands, that person may apply to the wetlands commission for a permit. The wetlands commission then, exercising its jurisdiction, may apply the standards set forth, in section 43a-41 of the Conn. Gen. Stat. and allow or forbid the activity.
Insofar as the amendment to the Winchester zoning regulations require a distance from the lake, wetland or stream 75 feet, or restrict building within 25 feet of a wetland or stream, it is in conflict with the inland wetlands regulations of the town and therefore not legally enforceable. Accordingly, those portions of the regulations[1] are declared null and void. In all other respects, the appeal is dismissed.
PICKETT, J.