Irvin S. NAYLOR; Harry H. Fox, Jr.; and Valley Acres, Inc., Appellants,

v.

The TOWNSHIP OF HELLAM, the Board of Supervisors of the Township of Hellam.

Commonwealth Court of Pennsylvania.

Argued April 14, 1998.

Decided Sept. 4, 1998.

Bradley J. Leber, York, for appellants.

David C. Keiter, York, for appellees.

Before PELLEGRINI and LEADBETTER, JJ., and JIULIANTE, Senior Judge.

LEADBETTER, Judge.

Irvin S. Naylor, Harry H. Fox, Jr., and Valley Acres, Inc. (appellants)[1] appeal from the order of the Court of Common Pleas of York County (trial court) which, on cross-motions for summary judgment, denied appellants' motion and granted the motion of the Township of Hellam and the Board of Supervisors of the Township of Hellam (collectively, Township). Specifically at issue is whether The Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as reenacted and amended,* 53 P.S. §§ 10101–11202, authorizes a municipality to enact a moratorium ordinance which prohibits certain types of land development while the municipality revises its Comprehensive Plan and zoning, subdivision and land development ordinances.

The relevant facts are undisputed. On July 20, 1995, the Township[2] enacted Ordinance No. 1995–10 which imposed a moratorium on new subdivisions and certain land development for a period of one year.[3] The express purpose of the ordinance was to suspend certain subdivision and land development while the Township revised its Comprehensive Plan and zoning, subdivision and land development ordinances, thereby preventing continued development from defeating the intended effect of the revised plans and ordinances. Ordinance 1995–10, section 1. Specifically, the ordinance prohibited all residential subdivisions and development as well as all commercial and industrial development to the extent such development was not serviceable by the existing public sewer system. *Id.* at sections 1 and 2. Land development plans which were already approved and plans which did not require further subdivision and an on lot disposal system were excepted from the moratorium. *Id.* at section 4.

Ordinance 1995–10 expired by its own terms on July 25, 1996, and thereafter, was extended by ordinance for an additional two months. Ordinance No. 1996–5. On Sep-

---

1. Appellants each own or have an interest in undeveloped real estate in Hellam Township.

2. Hellam Township is a Second Class Township in York County.

3. Prior to that time, subdivision and land development in the Township was governed by Ordinance No. 1981–4 and the amendments thereto. *Naylor v. Township of Hellam,* No. 96–SU–04112–08, slip op. at 2 (York County, filed September 26, 1997).

tember 5, 1996, the Township enacted the new Comprehensive Plan and zoning, subdivision and land development ordinances.[4] On August 22nd and 23rd, approximately two weeks before the new Plan and ordinances were enacted, appellants submitted preliminary subdivision and development plans to the Township's zoning officer for review. The zoning officer rejected the plans on various grounds, including that the plans appeared to have been submitted under the ordinances being revised rather than the pending ordinances, the plans failed to comply with the pending ordinances and the moratorium was still in effect.

Thereafter, appellants commenced a civil action seeking (1) a declaratory judgment that Ordinance 1995–10 was invalid as a matter of law, and (2) to force the Township, by way of mandamus, to accept and review their plans under the [prior] ordinances in effect at the time of their submission. Following discovery, both parties filed motions for summary judgment: appellants asserted that neither the MPC nor the Second Class Township Code (Code)[5] authorized the enactment of a moratorium ordinance and, therefore, the ordinance was invalid as a matter of law, while the Township maintained that it had properly reviewed and rejected the appellants' plans under the pending, revised ordinances. The trial court, the Honorable John S. Kennedy, granted the Township's motion and denied appellants', concluding in a well-reasoned opinion that although the power to enact moratoria on subdivision and land development is not expressly authorized by

statute, the legislature, through the MPC, has conferred broad authority upon municipalities to regulate land use, and that the power to enact moratoria is incidental to the powers of regulation expressly granted by the MPC. *Naylor v. Township of Hellam (Trial Court Opinion)*, No. 96–SU–04112–08, slip op. at 9–10, 15 (York County, filed September 26, 1997).[6] The present appeal followed.[7]

On appeal, appellants maintain their contention that neither the MPC nor the Code authorizes the enactment of moratoria on development and, therefore, the Township's moratorium ordinance was invalid as a matter of law.[8] Section 1516 of the Code provides that:

> The board of supervisors may plan for the development of the township through zoning, subdivision and land development regulations under the act of July 31, 1968 (P.L. 805, No. 247), known as the "Pennsylvania Municipalities Planning Code."

53 P.S. § 66516.

■ It is well settled that municipalities, such as Hellam Township, are creatures of the sovereign and they may exercise only those powers expressly granted to them as well as those necessarily or fairly implied or incidental to the powers expressly granted. *Condemnation of Property of Golding v. The Township of New Britain*, 33 Pa.Cmwlth. 635, 382 A.2d 509, 511 (1978). Although we agree that the MPC does not expressly grant municipalities the authority to impose mora-

---

4. The revised ordinances were first advertised on June 10, 1996, and a public hearing followed on June 27.

5. Act of May 1, 1933, P.L. 103, *as reenacted and amended*, 53 P.S. §§ 65101–68701.

6. Due to its conclusion that the Township's moratorium ordinance was a valid means of land use regulation, the trial court did not reach the issue of whether the appellants' plans were properly reviewed under the pending ordinances.

7. Summary judgment is properly granted when the pleadings, depositions, interrogatory answers, admissions, affidavits and expert reports, if any, demonstrate that there is no genuine issue of material fact and that the moving party is

entitled to judgment as a matter of law. Pa. R.Civ.P. 1035.2; *Schroeder v. Commonwealth, Dep't of Transportation*, 551 Pa. 243, ——, 710 A.2d 23, 25 (1998). In the present case, neither party contends that issues of material fact remain, therefore, based upon the issue presented, our review is limited to a determination of whether the trial court erred in its resolution of the legal issue before it, an issue over which we have plenary review.

8. We note that in their summary of argument in their brief to this Court, appellants allude to the argument that moratoria raise implications of non-compensated takings. However, since appellants have failed to develop this argument in any meaningful way (nor was it preserved in their Statement of Matters Complained of on Appeal), we decline to address it.

toria,[9] the power to impose moratoria may be a power which is necessarily or fairly implied or incidental to those powers expressly granted. This is an issue which the appellate courts of this Commonwealth have not previously addressed.[10]

In determining the extent of power and authority that the legislature intended to confer upon municipalities through the MPC, we initially note that the MPC is an act which must be liberally construed in order to effect its purposes. 1 Pa.C.S. § 1928; *Township of Middletown v. Abel*, 7 Pa.Cmwlth. 6, 297 A.2d 525, 528 n.2 (1972). Further, in ascertaining legislative intent, we must presume that the legislature intended to favor the public interest as against any private interest. 1 Pa.C.S. § 1922(5).

Turning to the statute itself, we note that the stated purpose of the act is very broad. The legislature, through the MPC, sought to empower municipalities to protect and promote citizen health, safety and welfare, to effectuate and achieve coordinated development and growth, to guide the uses of land and structures as well as the type and location of streets, public grounds and facilities and to permit the minimization of presently existing and foreseeable municipal problems. Section 105 of the MPC, 53 P.S. § 10105. To accomplish these goals, the act authorizes local governing bodies to, among other things, (1) prepare a comprehensive plan to guide the development of the municipality,[11] (2) regulate subdivision and land development through the enactment of subdivision and land development ordinances;[12] and (3) regulate land use, structure use, population

9. Ordinances imposing moratoria are also not expressly prohibited by the MPC.

10. The only cases discovered which touch upon this issue are *Kline v. Harrisburg*, 362 Pa. 438, 68 A.2d 182 (1949) and *McNaughton Co. v. Witmer*, 149 Pa.Cmwlth. 307, 613 A.2d 104 (1992); neither case, however, is very helpful. In *Kline*, our Supreme Court struck down a zoning ordinance which was designed to maintain the status quo of residential districts while the governing body developed a comprehensive zoning ordinance. The Supreme Court declared the ordinance invalid on the basis that it was not enacted in compliance with the provisions of the Third Class City Law. Of significance is the fact that the only applicable enabling legislation in effect at that time was the Third Class City Law; the MPC had not yet been enacted. Moreover, at that time, strict construction of statutes was required as the Statutory Construction Act (of 1937) had not yet been enacted. *See generally Exton Quarries, Inc. v. Zoning Bd. of Adjustment of West Whiteland Township*, 425 Pa. 43, 49–50, 228 A.2d 169, 175 (1967). Thus, *Kline* does not address whether moratoria are valid under the MPC.

In *McNaughton*, a developer filed an application for building and sewer connection permits approximately two weeks before the governing body enacted a ban on the issuance of such permits. The application was subsequently denied under the moratorium and the developer commenced an action in mandamus to compel the grant of the permits and to recover damages for the resulting delay in receipt of the permits. When the case reached this Court, the developer, admitting in its brief that it was not challenging the validity of the moratorium ordinance, focused on the issue of whether it had acquired a vested right to the requested permits prior to the enactment of the moratorium. Therefore, the validity of the moratorium on the issuance of

certain permits was not before us. We did comment in that case, however, that the moratorium ordinance at issue was not a zoning ordinance but an emergency public safety enactment, the validity of which, did not rest in zoning law; rather, its lawfulness rested on whether the governing body could declare the emergency and take the steps it did to protect the community. *Id.* 613 A.2d at 107. We also commented that matters which affect the health and welfare of the public are subject to regulation through the government's police power. *Id.* at 108.

11. Sections 301 and 302 of the MPC, 53 P.S. §§ 10301, 10302.

12. Sections 501 and 503 of the MPC, 53 P.S. §§ 10501, 10503. For instance, Section 503 provides:

The subdivision and land development ordinance *may include, but need not be limited to:*

. . . .

(2) Provisions for insuring that:

(i) the layout or arrangement of the subdivision or land development shall conform to the comprehensive plan and to any regulations or maps adopted in furtherance thereof;

(ii) streets in and bordering a subdivision or land development shall be coordinated, and be of such widths and grades and in such locations as deemed necessary to accommodate prospective traffic, and facilitate fire protection;

(iii) adequate easements or rights-of-way shall be provided for drainage and utilities;

. . . .

(5) Provisions for encouraging and promoting flexibility, economy and ingenuity in the layout and design of subdivisions and land developments . . .

(Emphasis added).

density and activities through the enactment of zoning ordinances.[13]

■ Construing the purpose of the act and the provisions of Articles V and VI [14] of the MPC liberally and with the promotion of the public interest in mind, we conclude that the legislature intended to (and did) confer broad authority upon municipalities to regulate land use in their jurisdictions. The language of applicable provisions of the act is neither limiting nor all-inclusive; rather (disregarding its procedural provisions) it sets forth general guidelines which afford governing bodies much discretion and flexibility to enact comprehensive plans and regulations tailored to their individual land use planning, growth and problem solving needs.

Moreover, we agree that implicit in or incidental to the broad powers expressly conferred upon municipalities is the authority to impose moratoria on development while land use regulations are in the process of being revised. Maintaining the status quo serves to protect and promote the health and welfare of the municipality's citizens by ensuring that proposed development conforms to rather than defeats the revised plans and regulations, see Section 503(2)(i), and by preventing further uncoordinated or hazardous development stemming from the regulations in effect prior to the moratorium.[15] Appellants' narrow construction of the MPC is unsupported by the broad language of the act and, if enforced, would serve to hinder or reduce governing bodies' ability to effectuate the express purposes of the act, such as coordinated growth, development which follows the comprehensive plan, and proactive problem solving.[16]

---

13. Sections 601 and 603 of the MPC, 53 P.S. §§ 10601, 10603. Section 601 provides, "[t]he governing body ... may enact, amend and repeal zoning ordinances to implement comprehensive plans and to accomplish any of the purposes of this act."

 Section 603 provides, in pertinent part:
 (a) Zoning ordinances should ... give consideration to the character of the municipality, the needs of the citizens and the suitabilities and special nature of particular parts of the municipality.
 (b) Zoning ordinances may permit, prohibit, regulate, restrict and determine:
 (1) Uses of land, watercourses and other bodies of water.
 (2) Size, height, bulk, location, erection, construction, repair, maintenance, alteration, razing, removal and use of structures.
 (3) Areas and dimensions of land and bodies of water to be occupied by uses and structures, as well as areas, courts, yards, and other open spaces and distances to be left unoccupied ...
 (4) Density of population and intensity of use.
 (5) Protection and preservation of natural resources and agricultural land and activities.
 In addition to the itemized provisions which a zoning ordinance may contain, the act also includes a broad catch-all provision, which provides that a zoning ordinance may contain "such other provisions as may be necessary to implement the purposes of [the MPC]." See Section 603(4) of the MPC, 53 P.S. § 10603(4).

14. Sections 105, 501–515.3 and 601–619.1 of the MPC, 53 P.S. §§ 10105, 10501–10515.3, 10601–10619.1.

15. As the trial court aptly noted:

[T]he power to enact moratoria on subdivision or development is incidental as essential and necessary for the effectuation of municipalities' power to regulate land use. If one considers the growth rate experienced by most rural communities surrounding urban areas, one can easily recognize that comprehensive plans and subdivision and land development ordinances will, from time to time, require revision, sometimes drastic revision, as communities grow and change. As regulatory change takes time and uncoordinated, unrestrained development and subdivision may prohibit or impair the future growth of a community, change usage patterns, outstrip available public resources, and create unforeseen problems in the development and growth of a community, moratoria on subdivision and development may be necessary to coincide with the revision of comprehensive plans and [ ] ordinances in order to preserve the status quo while municipalities adopt more responsive [regulations].
Opinion, Kennedy, J. at 11.

16. We note that other jurisdictions have concluded that the general grant of zoning power in an enabling statute permits the use of moratoria, also referred to as "interim zoning," to control development and prevent disruption of revised plans and regulations. See Arnold Bernhard and Co., Inc. v. Planning and Zoning Comm. of Westport, 194 Conn. 152, 479 A.2d 801 (1984) (and cases cited therein); A. Copeland Enter., Inc. v. City of New Orleans, 372 So.2d 764 (La.App. 1979); Tisei v. Town of Ogunquit, 491 A.2d 564 (Me.1985); Collura v. Town of Arlington, 367 Mass. 881, 329 N.E.2d 733 (1975); Almquist v. Town of Marshan, 308 Minn. 52, 245 N.W.2d 819 (1976); McDonald's Corp. v. Village of Elmsford, 156 A.D.2d 687, 549 N.Y.S.2d 448 (1989); Ford v. Board of County Comm'rs, 924 P.2d 91 (Wyo. 1996).

In reaching the conclusion that moratoria are permissible under the MPC, we reject appellants' argument that enactment of a moratorium ordinance is inconsistent with the provisions of Section 508 of the MPC, 55 P.S. § 10508. Specifically, appellants argue that the provision that "all applications for approval of a plat ... shall be acted upon by the governing body ... within such time limits as may be fixed in the [ordinance]" mandates that the Township accept their applications without exception. Similarly, appellants contend that the provision that once an application has been filed and submitted for approval, "no change or amendment of the zoning, subdivision or other governing ordinance or plan shall affect the decision on such application," 53 P.S. § 10508(4), mandates that their plans be reviewed under the ordinances in effect prior to the moratorium. We disagree.

■ Appellants' arguments ignore the effect of Ordinance 1995–10. Essentially, Ordinance 1995–10 acted as a suspension of the prior ordinances, thereby depriving the zoning officer of the ability to accept and review the applications under the prior ordinances. Further, Section 508 cannot be construed as a mandate that all applications be accepted. Section 508 was enacted in order to remedy the indecision and protracted deliberations of governing bodies and their planning agencies, and to eliminate deliberate or negligent inaction on the part of government officials, *see generally Degroot v. Board of Supervisors of Tinicum,* 157 Pa.Cmwlth. 350, 629 A.2d 318, 320 (1993); it is not a limitation on the municipality's ability to respond to and coordinate the growth of its community through moratoria.

Finally, appellants contend that the trial court erred in concluding that the ordinance was a valid and reasonable exercise of municipal power.[17] Specifically, appellants object to the ordinance on the grounds that: (1) it was not properly limited in duration because the Township had the ability to extend it indefinitely; and (2) it was discriminatory in intent and effect since it only affected residential subdivision.

■ In determining the validity of an ordinance in this Commonwealth, we start with the presumption that the enactment is valid and the burden of proving otherwise lies with the challenger. *Schubach v. Silver,* 461 Pa. 366, 336 A.2d 328, 335 (1975). We may only declare a zoning ordinance invalid or unconstitutional when the challenging party has demonstrated that the ordinance is arbitrary and unreasonable and bears no relation to the public health, safety, morals and welfare. *Id. See also Shohola Falls Trails End Property Owners Ass'n v. Zoning Hearing Bd.,* 679 A.2d 1335, 1340 (Pa.Cmwlth. 1996). With respect to moratoria specifically, other jurisdictions have determined validity by focusing on a variety of factors, such as whether the moratorium was properly limited in scope and duration, enacted in good faith and without discrimination. *See generally Arnold Bernhard and Co. v. Planning and Zoning Comm. of Westport,* 194 Conn. 152, 479 A.2d 801 (1984) (moratorium valid as reasonably limited in scope and duration); *Collura v. Town of Arlington,* 367 Mass. 881, 329 N.E.2d 733 (1975) (moratorium valid as reasonably limited in scope and duration); *Almquist v. Town of Marshan,* 308 Minn. 52, 245 N.W.2d 819 (1976) (governing body has authority to adopt moratoria of limited dura-

Conversely, as the court noted in *Arnold Bernhard and Co.,* when an interim zoning ordinance is judicially invalidated, its usually done on the basis that the ordinance was not enacted in conformity with statutory procedure. 194 Conn. at 163, 479 A.2d at 807 (and cases cited therein). *See also Kline v. Harrisburg, supra.* Here, appellants have not challenged Ordinance 1995–10 on the basis that its enactment was procedurally flawed.

17. The trial court raised this issue *sua sponte.* In concluding that the ordinance was valid, the trial court opined that the ordinance was: (1) ration-

ally related to protection of the health, safety and welfare of the community; (2) properly limited in scope and duration; and (3) in the absence of any allegations to the contrary, non-discriminatory and enacted in good faith. Although the trial court did not cite any authority for employing these criteria, we find them to be appropriate and note that the second and third factors were employed by the courts in *Collura v. Town of Arlington,* 367 Mass. 881, 329 N.E.2d 733 (1975) and *Almquist v. Town of Marshan,* 308 Minn. 52, 245 N.W.2d 819 (1976).

tion provided that they are enacted in good faith and without discrimination).

Here, construing both of appellants' objections as criticisms of the reasonableness of the ordinance, we conclude that neither objection commands a declaration that the ordinance was invalid. The ordinance was reasonably limited in time, especially when considering that the Township was undertaking a comprehensive revision of its plans and land use regulations.[18] Nor can we conclude in the absence of specific evidence that the ordinance is discriminatory merely because it primarily prohibits residential development. To the contrary, narrowly tailoring an ordinance prevents it from restricting development or land use unnecessarily. Accordingly, we conclude that appellants have failed to overcome the presumption that Ordinance 1995–10 is valid.

Based upon the foregoing, the order of the trial court is affirmed.

### ORDER

AND NOW, this 4th day of September, 1998, the order of the Court of Common Pleas of York County in the above captioned matter is hereby affirmed.

---

**18.** Moratoria of one year or longer have been held to be reasonable in length. *See Collura,* 367 Mass. 881, 329 N.E.2d 733 (1975) (two-year moratorium); *McDonald's Corp.,* 156 A.D.2d 687, 549 N.Y.S.2d 448 (1989) (one-year moratorium). *Compare Schoeller v. Board of Comm'rs,* 568 P.2d 869 (Wyo.1977) (moratorium in effect for five years held invalid).