773 A.2d 770

**Irvin S. NAYLOR, Harry H. Fox, Jr., and Valley Acres, Inc., Appellants**

v.

**The TOWNSHIP OF HELLAM and the Board of Supervisors of the Township of Hellam, Appellees.**

Supreme Court of Pennsylvania.

Argued May 1, 2000.

Decided June 20, 2001.

Newman, J., filed a dissenting opinion.

Albert G. Blakey, Bradley J. Leber, Blakey Yost Bupp & Schumann, York, for appellants, Irvin S. Naylor et al.

David Keiter, Seidensticker, Kreiter & Baughman, York, for appellees, Tp. of Hellam et al.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## *OPINION*

ZAPPALA, Justice.

This appeal presents the issue of whether a municipality may enact a temporary moratorium on certain types of subdivision and land development while the municipality revises its zoning and subdivision land development ordinances. We hold that the Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as reenacted and amended*, 53 P.S. §§ 10101–11202, does not grant a municipality such power and therefore reverse the order of the Commonwealth Court, which held to the contrary.

The undisputed facts establish that Appellants, Irvin S. Naylor, Harry H. Fox, Jr., and Valley Acres, Inc., each own or have an interest in tracts of undeveloped land in Hellam Township, York County. On July 20, 1995, the Hellam Township Board of Supervisors (Board) enacted Ordinance No. 1995–10, which imposed a moratorium on new residential subdivision and land development for a period of one year. Hellam Township Ordinance No. 1995–10, §§ 2 and 5. Commercial and industrial development were also prohibited, but only to the extent that such development was not serviceable by the existing public sewer system. *Id.* at § 3. Subdivisions already in progress prior to the enactment of the moratorium that did not require additional lots, as well as land develop-

ment plans that did not require further subdivision or an on-lot disposal system, were excepted from the moratorium. *Id.* at § 4. The express purpose of the ordinance was to suspend certain subdivision and land development approvals while the Township completed the process of revising its comprehensive plan, so as to prevent development that is inconsistent with the proposed revisions. *Id.* at § 1. The moratorium expired by its own terms on July 25, 1996, but was extended by ordinance for an additional two month period on August 1, 1996. Hellam Township Ordinance No. 1996–5.

On June 10, 1996, the Board first advertised its revised subdivision and land development ordinance. A public hearing was held on June 27, 1996, and the ordinance became effective on September 5, 1996. On August 22 and 23, 1996, approximately two weeks before the new plan was effective, Appellants submitted their preliminary subdivision and development plans to the Hellam Township Zoning Officer. The zoning officer rejected the plans on the grounds that they appeared to have been submitted under the ordinances being revised rather than the pending ordinances and that they failed to comply with the pending ordinances. The zoning officer further indicated that the plans would have been denied even if compliant with the pending ordinances due to the moratorium in effect at the time of application.

Appellants subsequently filed the instant action, seeking a declaratory judgment that the moratorium was invalid or was not in effect at the time their preliminary plans were submitted. Appellants further requested the court to order the Board to accept and review their respective preliminary plans under the ordinances in effect at the time of their submission. Both parties filed motions for summary judgment. Appellants asserted that neither the MPC nor the Second Class Township Code, Act of May 1, 1933, P.L. 103, *as reenacted and amended,* 53 P.S. §§ 65101–68701, authorized the enactment of a moratorium ordinance, and therefore the ordinance was invalid as a matter of law. The Township maintained that the moratorium was valid and that it had properly reviewed and rejected Appellants' plans under the pending, revised ordinances.

The common pleas court granted summary judgment in favor of the Township. It acknowledged that the MPC does not expressly grant municipalities the authority to prohibit subdivision or development either temporarily or permanently. It held, however, that the power is incidental as essential and necessary for the effectuation of a municipality's power to regulate land use under the MPC. Although not challenged by the parties, the court went on to examine the scope and duration of the moratorium and found them to be reasonable, and enacted without discriminatory intent.[1]

The Commonwealth Court affirmed. *Naylor v. Township of Hellam*, 717 A.2d 629 (Pa.Cmwlth.1998). Construing the purpose and provisions of the MPC liberally, the court held that "the power to impose moratoria may be a power which is necessarily or fairly implied or incidental to those powers expressly granted [by the MPC]." *Id.* at 632. It found that it was in the public interest to maintain the status quo in land development by ensuring that proposed development conforms to rather than defeats the revised plans and regulations. Otherwise, the court concluded, the municipality's ability to effectuate the express purposes of the MPC, such as coordinated growth and development consistent with the comprehensive plan, would be hindered. *Id.* at 633.

Summary judgment may be entered only in those cases where the record clearly demonstrates that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Dean v. Common-*

---

1. Because it upheld the Township's enactment of a moratorium, the court did not address the issue of whether the Township was entitled to summary judgment as a result of the applicability of the pending ordinance doctrine, an issue which the Township raised in its answer to Appellants' complaint and both parties fully briefed before the trial court. For purposes of clarity, the moratorium ordinance was not pending but had already been enacted and extended for an additional two month period at the time Appellants' applications were filed. Thus any "pending ordinance" discussion is not relevant to the moratorium issue, but rather relates to the applicability of the new zoning and subdivision land development ordinances that were pending at the time of Appellants' application.

wealth of Pennsylvania, Department of Transportation, 561 Pa. 503, 751 A.2d 1130 (2000). As the parties concede that no issues of material fact remain, we must determine whether the lower courts erred as a matter of law in concluding that a municipality has the power to enact a moratorium on land development while it revises its comprehensive zoning plan. As with all issues of law, our review is plenary. *Phillips v. A–Best Products Co.*, 542 Pa. 124, 665 A.2d 1167 (1995).

■ Initially, we note that it is fundamental that municipalities are creatures of the state and that the authority of the Legislature over their powers is supreme. *Denbow v. Borough of Leetsdale*, 556 Pa. 567, 729 A.2d 1113, 1118 (1999); *Shirk v. Lancaster City*, 313 Pa. 158, 169 A. 557 (1933). Municipal corporations have no inherent powers and may do only those things that the Legislature has expressly or by necessary implication placed within their power to do. *Id.; In re Gagliardi*, 401 Pa. 141, 163 A.2d 418 (1960).[2]

■ The parties agree that neither the MPC nor the SCTC expressly grants a municipality the power to impose a moratorium on subdivision approvals. Our inquiry therefore becomes whether such power is implicitly granted or is incidental to those powers expressly conferred.

2. Appellants contend that the Commonwealth Court's decision in *City of Philadelphia v. Civil Service Commission*, 717 A.2d 1067 (Pa.Cmwlth. 1998), stands for the proposition that municipalities do not possess powers by implication. In *City of Philadelphia*, the issue was whether the Civil Service Commission had the authority to reinstate without backpay a custodial worker employed by the City of Philadelphia when the Commission confirmed the factual basis for the City's dismissal of the employee. The Commonwealth Court held that the Commission had no such power since the Philadelphia Home Rule Charter did not expressly permit the Commission to alter a municipality's disciplinary sanction when the Commission's own findings support the action.

The court went on to state that "a municipality and its administrative bodies possess no power by implication." *Id.* at 1071, citing *American Aniline Products, Inc. v. Lock Haven*, 288 Pa. 420, 135 A. 726 (1927). Appellants' reliance on this statement is misplaced as the reference in *City of Philadelphia* was not only dicta, but was a misstatement of the law. Our Court in *American Aniline Products, Inc.* recognized that a municipal corporation *can* function through powers incidental to those expressly granted. *Id.* at 727. We stated however, that, *"[b]eyond such grant of authority*, a municipality possesses no power by implication." *Id.* (emphasis added).

■  We begin our analysis by examining the relevant provisions of the MPC.[3] In doing so, we recognize that zoning enabling legislation, as opposed to zoning ordinances themselves, must be liberally construed in order to effect its purposes. *Township of Middletown v. Abel*, 7 Pa.Cmwlth. 6, 297 A.2d 525, 528 (1972); *Exton Quarries, Inc. v. Zoning Board of Adjustment*, 425 Pa. 43, 228 A.2d 169, 174 (1967); *see also* 1 Pa.C.S. § 1928(c). Moreover, it must be presumed that the legislature intended to favor the public interest as against any private interest. 1 Pa.C.S. § 1922(5).

Section 105 of the MPC sets forth the broad purpose of the Act, which is to protect and promote citizen safety, health and morals, accomplish coordinated development, promote energy conservation, provide for the general welfare by guiding and protecting development and growth and permit municipalities to minimize such problems as may presently exist or which may be foreseen. 53 P.S. § 10105. To carry out some of these objectives, the statute expressly grants municipalities the authority to create and adopt a comprehensive development plan, *id.* at. §§ 10301 and 10302, and to regulate development by enacting subdivision and land development ordinances. *Id.* at §§ 10501 and 10601. The MPC provides that such ordinances may include, among other things, provisions for insuring that the layout of the subdivision and land development conforms to the comprehensive plan, *id.* at § 10503(2)(i), and provisions for encouraging and promoting flexibility, economy and ingenuity in the layout and design of subdivisions. *Id.* at § 10503(5). The MPC further states that zoning ordinances may permit, prohibit and regulate uses of land, areas and dimensions of land as well as the density of population and intensity of use. *Id.* at §§ 10603(b)(1), (3) and (4). A catch-all provision states that zoning ordinances may

3. The Second Class Township Code does not confer upon a municipality any additional powers regarding development planning. Instead, it refers to the provisions of the MPC as follows:

"**Land use regulations.** The board of supervisors may plan for the development of the township through zoning, subdivision and land development regulations under the Act of July 31, 1968 (P.L. 805, No. 247), known as the 'Pennsylvania Municipalities Planning Code.'"
53 P.S. § 66516.

contain "such other provisions as may be necessary to implement the purposes of [the MPC]." *Id.* at § 10603(c)(4).

■ As noted, the Commonwealth Court found that the power to enact a temporary moratorium while the Township revises its comprehensive plan is incidental to these expressly granted powers. We disagree. The practical effect of the enactment of the moratorium was to suspend the existing zoning ordinances applicable to subdivision approval until the revised ordinances became effective. Even construing the provisions of the MPC liberally, we find that the power to *enact* a zoning ordinance, for whatever purpose, does not necessarily include the power to *suspend* a valid zoning ordinance to the prejudice of a land owner. *Compare* 53 P.S. § 10609.2 (express grant of authority for municipality to invalidate zoning ordinance for period not to exceed 180 days while it enacts curative amendment). More significantly, the power to *suspend* land development has historically been viewed in this Commonwealth as a power distinct from and not incidental to any power to *regulate* land development. Accordingly, as the MPC is silent regarding land planning through the temporary suspension of development, we decline to condone a municipality's exercise of such power.

We find support for our decision in prior case law. In *Kline v. Harrisburg,* 362 Pa. 438, 68 A.2d 182 (1949), property owners applied for a building permit authorizing the construction of an apartment building. While the application was pending, the City of Harrisburg enacted an ordinance prohibiting all construction other than single family dwellings in an attempt to preserve the status quo of residential districts while the city completed its new zoning plan. The property owners sought to restrain the city from enforcing the provisions of what they referred to as an "interim" zoning ordinance,[4] and to direct the city to issue the requested building permit.

Our Court affirmed the lower court decision in favor of the property owners on various grounds. Initially, we held that

4. Known in some cases as "stopgap" ordinances, "interim" ordinances are those enacted in contemplation of the adoption of comprehensive

the city failed to comply with the procedural requirements for enacting an ordinance pursuant to its enabling act, the Third Class City Law of June 23, 1931, P.L. 932, 53 P.S. §§ 12198–4110 to 4113. We further rejected the city's argument that the Third Class City Law included an implied or inherent power to pass an interim ordinance suspending development. The city contended, as does the Township in the instant case, that if it did not possess such power, property owners could always defeat the local governing body's efforts in establishing a new comprehensive zoning plan by rushing to get their projects approved before the enactment of a new zoning ordinance.

Our Court's response to this argument was two-fold. We stated:

> In the first place, although the argument is not entirely without merit, it is one which must be directed to the legislature and not to the courts. If the legislature wishes to authorize the enactment of a "temporary" or "interim" ordinance to maintain the status quo it can so provide by legislation with proper safeguards. In the second place, apparently experience has not indicated that the failure to pass a "temporary" or "interim" ordinance has been any substantial menace to zoning.... Although there are scores and possibly hundreds of municipalities in Pennsylvania which have enacted zoning ordinances in accordance with. the expressed provisions of the relevant statutes, all of which are similar in nature, there is no indication that we could find either by proposed legislation or by cases in any of the courts of this State that these municipalities have suffered from inability to maintain the status quo during the enactment of zoning ordinances.

68 A.2d at 189.

▪ We recognize that *Kline* is not dispositive of the instant matter since it predated the MPC and instead interpret-

zoning ordinances. They are usually intended to preserve temporarily the status quo pending the adoption of permanent zoning regulations. See Annotation, *Validity and Effect of "Interim" Zoning Ordinance,* 30 A.L.R.3d 1196 (1970).

ed the Third Class City Law.[5] What is clear from the decision, however, is that the power to impose a moratorium is not essential and necessary for the effectuation of a municipality's power to regulate land use.

We find further support for our decision in *Boron Oil Company v. Kimple*, 445 Pa. 327, 284 A.2d 744 (1971). In *Boron Oil*, the land owners applied for a building permit for the construction of a gasoline station. The borough refused to issue the permit on the ground that it was in the process of enacting a new zoning ordinance, which would prohibit a service station on the landowner's property. The issue on appeal was whether the new ordinance was "pending" as of the date of the landowner's application and therefore whether the borough could refuse to issue the permit pursuant to the "pending ordinance doctrine." [6] Our Court held that because the borough had advertised a public meeting on the proposed rezoning and made the proposed ordinance available for public inspection prior to the filing of the application, the proposed ordinance was "pending" when the application was filed and the borough's refusal to issue the building permit was not improper.

We went on to state:

5. We also recognize that the moratorium in *Kline* was of an unlimited duration, unlike the one in the instant case, which lasted fourteen months. This factor has no bearing, however, on whether the Township possesses power to suspend land development for *any* duration.

6. Under the "pending ordinance doctrine," a building permit may be refused if, at the time of application, an amendment to a zoning ordinance is pending, which would prohibit the use of the land for which the permit is sought. *Id.* at 746. The pending ordinance rule does not apply to applications for subdivision or land development as they are controlled by section 508(4) of the MPC, which specifically addresses this kind of proposed land use. *Monumental Properties, Inc. v. Board of Commissioners of the Township of Whitehall*, 11 Pa.Cmwlth. 105, 311 A.2d 725 (1973). Section 508(4) essentially provides that applications for approval of a subdivision plat are governed by ordinances in effect at the time the applications were filed. 53 P.S. § 10508(4). As discussed *infra* at footnote 7, Appellants rely on this section as indicative of the legislature's intent to prohibit the imposition of a moratorium.

A word of caution is nevertheless in order. While we do not in this instance countenance a "race to the courthouse steps" by landowners to obtain rights to a nonconforming use, our present decision is not to be construed in any sense as granting a license to a municipality to use the pendency of a zoning ordinance as a device to impose either a general or selective moratorium on local land development. However much a rapidly expanding municipality may wish to declare "time out" and stop all development, such effect, by whatever means achieved, would be constitutionally impermissible.

*Id.* at 747–748.

We reiterate that these cases do not interpret provisions of the MPC, but clearly demonstrate that the power to "halt" development is not an extension of or incidental to any power to regulate land use or development. Despite our Court's previous pronouncements rejecting the existence of an implicit power of imposing a moratorium, the legislature has not acted to authorize municipalities to meet their planning objectives through the suspension, temporary or otherwise, of the process for reviewing land use proposals. As we stated in *Kline* over fifty years ago, "[i]f the legislature wishes to authorize the enactment of a "temporary" or "interim" ordinance to maintain the status quo it can so provide by legislation with proper safeguards." 68 A.2d at 189. The General Assembly is better suited to examine the significant policy issues at stake and to determine the appropriate legal standards to govern the application of such a powerful planning tool.[7]

7. In concluding that the MPC does not grant municipalities the authority to impose a moratorium on land development, we note that we also reject Appellants' arguments that sections 508 and 508(4), 53 P.S. §§ 10508, 10508(4), *prohibit* the imposition of a moratorium. To the contrary, we find that these procedural provisions merely set forth the approval process to be followed once a plan is properly submitted (section 508), and address in what circumstances an ordinance is applicable to a particular application for subdivision (section 508(4)). They do not directly speak to a municipality's authority to impose a moratorium.

We further reject Appellants' argument that because section 501 of the MPC, 53 P.S. § 10501, entitled, "Grant of Power," does not include any language referring to a governing body's ability to prohibit subdivi-

We are fully aware that many other states have approved the enactment of a temporary moratorium on land development absent express language in the municipality's enabling act.[8] We conclude, however, that the cases of each jurisdiction rest upon the constitution, statutes and case law of the particular state. As our own case law views the power to impose a moratorium as distinct from rather than incidental to the power to regulate land development, we find the cases of our sister jurisdictions unpersuasive.

Although we have determined that the lower courts erred in granting summary judgment in favor of the Township on the ground that the MPC authorizes the enactment of a moratorium, the Township offered an alternative ground in support of summary judgment, which was not addressed by the lower courts. Under these circumstances, we would generally remand for disposition of any remaining claims. The Township's alternative argument was that it was entitled to summary judgment due to the application of the pending ordinance doctrine. In its brief to our Court, however, the Township concedes that "the pending ordinance rule does not apply to plan submission, *Monumental Properties, Inc. v. Board of Commissioners*, 11 Pa.Cmwlth. 105, 311 A.2d 725 (1973)." Appellee Brief at 5. As such concession is a proper interpretation of the law, see footnote 6, *supra*, a remand under these circumstances would serve no purpose.

Accordingly, we reverse the order of the Commonwealth Court and direct the Township to review Appellants' applica-

sion or land development, such power does not exist. The absence of specific authority is not conclusive, as it is well-settled that a municipality may possess powers that are incidental to those expressly granted.

8.  See *Arnold Bernhard and Co. v. Planning and Zoning Commission of Westport*, 194 Conn. 152, 479 A.2d 801 (1984); *A. Copeland Enter., Inc. v. City of New Orleans*, 372 So.2d 764 (La.App.1979); *Tisei v. Town of Ogunquit*, 491 A.2d 564 (Me.1985); *Collura v. Town of Arlington*, 367 Mass. 881, 329 N.E.2d 733 (1975); *Almquist v. Town of Marshan*, 308 Minn. 52, 245 N.W.2d 819 (1976); *McDonald's Corp. v. Village of Elmsford*, 156 A.D.2d 687, 549 N.Y.S.2d 448 (1989); *Ford v. Board of County Commissioners*, 924 P.2d 91 (Wyo.1996).

tions according to the zoning and subdivision ordinances in effect at the time they were filed.

Justice NEWMAN files a dissenting opinion.

NEWMAN, Justice, dissenting.

Because I believe that the Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, as reenacted and amended, 53 P.S. §§ 10101–11202, does grant a municipality the power to enact a temporary moratorium on certain types of subdivision and land development while the municipality revises its zoning and subdivision land development ordinances, I respectfully dissent.

As the Majority points out, the stated purpose of the MPC is very broad. Section 105 defines the purpose of the act:

It is the intent, purpose and scope of this act to protect and promote safety, health and morals; to accomplish coordinated development; to provide for the general welfare by guiding and protecting ... development and growth[;] ... to guide uses of land and structures, type and location of streets, public grounds and other facilities; to promote the conservation of energy[;] ... and to permit municipalities to minimize such problems as may presently exist or which may be foreseen.

53 P.S. § 10105. To achieve this stated purpose, the MPC grants municipalities the authority to, among other things, prepare and adopt a comprehensive development plan,[1] regulate subdivision and land development by enacting subdivision and land development ordinances,[2] regulate land use, structure use, population density and activities by enacting zoning ordinances,[3] and enact such zoning ordinance provisions as may be necessary to effectuate the purposes of the MPC.[4]

1. 53 P.S. §§ 10301, 10302.
2. 53 P.S. §§ 10501, 10503.
3. 53 P.S. §§ 10601, 10603.
4. 53 P.S. §§ 10601, 10603.

I dissent from the Majority, and agree with the decisions of the trial court and Commonwealth Court because I believe that "implicit in or incidental to the broad powers expressly conferred upon municipalities is the authority to impose moratoria on development while land use regulations are in the process of being revisited." *Naylor v. Township of Hellam*, 717 A.2d 629, 633 (Pa.Cmwlth.1998). Section 503(2)(i) authorizes the Hellam Township Board of Supervisors (Board) to adopt provisions for insuring that "the layout or arrangement of the subdivision or land development shall conform" to the Board's comprehensive plan. 53 P.S. § 10503(2)(i). The trial court aptly stated, "[a] logical means of ensuring that subdivision and development conform with a municipality's comprehensive plan during such time as an existing comprehensive plan and subdivision and land development ordinance are being revised and enacted would be to maintain the status quo by enacting a moratorium on subdivision and development." Trial Court Op., p. 10.

It is clearly the responsibility of the Board to monitor community growth and to provide adequate public necessities, such as transportation, water, sewage, schools and parks. In 1990, the Board noticed that development patterns in the township were changing and that the public sewage system could no longer service additional residences. In response, the Board began developing a new comprehensive plan. After the Board invested five years to research and develop this new comprehensive plan, the pace of subdivision and development within the township escalated dramatically. The Board knew that once they announced a new proposed comprehensive plan that substantially altered the existing plan, landowners and developers would flood the Board with applications for subdivision and development pursuant to the existing plan. Recognizing that the proposed comprehensive plan would soon be obsolete, the Board invoked the only tool that would allow them to enact such a plan as they are authorized to do under the MPC. The Board imposed a temporary moratorium on subdivision and development that was nondiscriminatory, lim-

ited in duration, and enacted in good faith.[5]

As the Majority concedes, the MPC must be liberally construed in order to effectuate its purpose, *Middletown v. Abel,* 7 Pa.Cmwlth. 6, 297 A.2d 525 (1972), and we must presume that the legislature intended to favor the public interest as against any private interest. 1 Pa.C.S. § 1922(5). The objectives underlying the use of temporary moratoria are consistent with the purposes of the MPC.[6] A moratorium allows the municipality time in which to create a new comprehensive plan. Until the new plan is enacted, no development is allowed, thereby insuring that development is consistent with the new plan. The California Supreme Court stated in a landmark temporary moratorium case:

> It is a matter of common knowledge that a zoning plan of the extent contemplated in the instant case cannot be made in a day; therefore we may take judicial notice of the fact that it will take much time to work out the details of such a plan and that obviously it would be destructive of the plan if, during the period of its incubation, parties seeking to evade the operation thereof should be permitted to enter upon a course of construction which might progress so far as to defeat in whole or in part the ultimate execution of the plan.

*Miller v. Board of Public Works of City of Los Angeles,* 195 Cal. 477, 234 P. 381 (1925), *app. dism.,* 273 U.S. 781, 47 S.Ct. 460, 71 L.Ed. 889 (1927). Temporary moratoria allow the

---

**5.** Other jurisdictions that have approved the use of moratoria have done so on the grounds that moratoria contain similar constraints. See *Arnold Bernhard and Co., Inc. v. Planning and Zoning Commission of Westport,* 194 Conn. 152, 479 A.2d 801 (1984); *Almquist v. Town of Marshan,* 308 Minn. 52, 245 N.W.2d 819 (1976).

**6.** Other states have found, without relying on specific statutory authorization, that the power to enact moratoria and other interim zoning devices is within the scope of general zoning enabling acts. *See A. Copeland Enterprises, Inc. v. New Orleans,* 372 So.2d 764 (La.Ct.App. 1979); *Collura v. Town of Arlington,* 367 Mass. 881, 329 N.E.2d 733 (1975); *Monmouth Lumber Co. v. Ocean Township,* 9 N.J. 64, 87 A.2d 9 (N.J.1952); *Lebanon v. Woods,* 153 Conn. 182, 215 A.2d 112 (1965); *Rubin v. McAlevey,* 54 Misc.2d 338, 282 N.Y.S.2d 564 (N.Y.Sup.Ct. 1967), *aff'd,* 29 A.D.2d 874, 288 N.Y.S.2d 519 (N.Y.App.Div.1968); *Gayland v. Salt Lake County,* 11 Utah 2d 307, 358 P.2d 633 (1961); *Walworth County v. Elkhorn,* 27 Wis.2d 30, 133 N.W.2d 257 (1965).

municipality to preserve the status quo while the municipality develops and adopts its new comprehensive plan. "Maintaining the status quo serves to protect and promote the health and welfare of the municipality's citizens by ensuring that proposed development conforms to rather than defeats the revised plans and regulations and by preventing further uncoordinated or hazardous development stemming from the regulations in effect prior to the moratorium." *Naylor*, 717 A.2d at 633. Temporary moratoria also ensure that residents and landowners will have the opportunity to voice their opinions regarding the proposed comprehensive plan.

> The orderly process of interim zoning allows the issues to have the benefit of full public debate, at the same time protecting the affected area from unwise exploitation prior to agreement and formulation of new zoning restrictions which may apply. [T]he landowner whose property is subject to the interim provision in this case is no worse off than if the town had simply rezoned the area to exclude apartment buildings in the traditional manner, with the intent of again amending the by-law in two years to reflect a new comprehensive plan. At the least, with the adoption of an interim provision he is made aware that a new plan is in the offing and is thus able to participate in the debate over what the new plan should contain.

*Collura v. Town of Arlington*, 367 Mass. 881, 329 N.E.2d 733, 737 (1975). Without the authority to invoke moratoria, municipalities have an exceptionally heavy task in drafting and implementing comprehensive plans amidst the urban sprawl and shortages of facilities. I do not believe the legislature intended to place such a burden on municipalities and their planning boards. The Majority's narrow interpretation of the MPC is unsubstantiated by the MPC's broad purpose and, "if enforced, would serve to hinder or reduce governing bodies' ability to effectuate the express purposes of the act, such as coordinated growth, development which follows the comprehensive plan, and proactive problem solving." *Naylor*, 717 A.2d at 633.

While several jurisdictions have articulated reasons for and approved uses of temporary moratoria, few have addressed

the "proper safeguards" these moratoria must contain.[7]  Both the trial court and the Commonwealth Court in this case examined the constitutionality of the Board's temporary moratorium.  The Commonwealth Court determined that the temporary moratorium was reasonably limited in time and narrowly tailored to prohibit only so much development as necessary to effectuate its purpose.  *Naylor,* 717 A.2d at 635.  Because I reason that the MPC implicitly or inherently permits municipalities to invoke temporary moratoria, I believe it is the role of this Court to create and install proper safeguards.

The MPC authorizes the use of temporary moratoria so long as they are enacted in good faith, limited in duration, and nondiscriminatory.  The question of whether temporary moratoria were enacted in good faith is a question of fact and courts should focus on the stated purpose for invoking the planning tool.  *See Dills v. City of Marietta,* 674 F.2d 1377 (11th Cir.1982).  Necessity of duration should be evaluated on a case-by-case basis, and the time should be measured by the scope of the problem being resolved.  *See Smoke Rise, Inc. v. Washington Suburban Sanitary Commission,* 400 F.Supp. 1369 (D.Md.1975).  Municipalities should justify why an extension beyond the original life of the moratoria is needed.  Courts in other jurisdictions have approved moratoria lasting one year,[8] eighteen months,[9] two years,[10] and four years.[11]

7. The Minnesota Supreme Court has previously identified five safeguards that must accompany every temporary moratorium. *Almquist v. Town of Marshan,* 308 Minn. 52, 245 N.W.2d 819 (1976). The moratorium must be nondiscriminatory, enacted in good faith, limited in duration, appropriate to the development of a comprehensive plan, and the municipality must act promptly to develop the comprehensive plan. *Id.* at 826.

8. *Schafer v. City of New Orleans,* 743 F.2d 1086 (5th Cir.1984).

9. *Golden v. Planning Board of Town of Ramapo,* 30 N.Y.2d 359, 334 N.Y.S.2d 138, 285 N.E.2d 291 (1972), *app. dism.,* 409 U.S. 1003, 93 S.Ct. 436, 34 L.Ed.2d 294 (1972).

10. *Collura v. Town of Arlington,* 367 Mass. 881, 329 N.E.2d 733 (1975).

11. *Cappture Realty Corp. v. Board of Adjustment,* 126 N.J.Super. 200, 313 A.2d 624 (Law Div.1973), *aff'd,* 133 N.J.Super. 216, 336 A.2d 30 (App.Div.1973).

Temporary moratoria will be nondiscriminatory when enacted in response to a necessity or when the local governing body can demonstrate that the ordinance serves the public health, safety, morals, aesthetics, or welfare, and is rationally related to the alleged permissible governmental objective. *Schafer v. City of New Orleans,* 743 F.2d 1086 (5th Cir.1984).

The temporary moratorium enacted by the Board in this case was limited in duration, enacted in good faith, and nondiscriminatory. The moratorium was enacted on July 20, 1995 and expired by its own terms on July 25, 1996. While the Board did extend the life of the moratorium by two months on August 1, 1996, the new comprehensive plan became effective September 5, 1996. Considering the Board was attempting to make a substantial modification to the subdivision and development ordinance, I believe that thirteen months is a reasonably limited time to impose this moratorium. The Board acted in good faith in enacting the moratorium. The Board noted that it was in the interest of the public to prevent the purpose of the revised comprehensive plan from being defeated via continued development and subdivision. In addition, the moratorium served to ensure adequate public sewer capacity and to promote sanitary sewage disposal. Finally, there is no evidence that the moratorium is discriminatory. Development and subdivision currently serviceable by the existing public sewer system were not subject to the temporary ordinance.

The Majority contends that "[t]he practical effect of the enactment of the moratorium was to suspend the existing zoning ordinances applicable to subdivision approval until the revised ordinances became effective." Majority Opinion, 565 Pa. at p. 405, 773 A.2d at p. 775. The Majority continues by stating that the power to enact a zoning ordinance is distinct from the power to suspend an ordinance, and that the latter cannot be implicitly authorized under the MPC. I disagree. The ordinance affected by the moratorium was not suspended. Rather, it is as if the municipality had rezoned the area to exclude residential building in the traditional manner, with the intent of again amending the ordinance in thirteen months to

reflect the new comprehensive plan. *See Collura,* 329 N.E.2d at 737. Under such a procedure, the landowner is in the same position as if the ordinance was subject to a municipality-issued moratorium.

The Majority relies on two cases, *Kline v. Harrisburg,* 362 Pa. 438, 68 A.2d 182 (1949) and *Boron Oil Co. v. Kimple,* 445 Pa. 327, 284 A.2d 744 (1971), for the proposition that "the power to 'halt' development is not an extension of or incidental to any power to regulate land use or development." Majority Opinion, 565 Pa. at p. 408, 773 A.2d at p. 777. In this case, we have been asked to focus on the text of the MPC and determine whether the MPC implicitly authorizes municipalities to impose temporary moratoria on subdivision and development. I fail to see the relevance of citing two cases that do not interpret provisions of the MPC.[12] *Kline* has made clear that the Third Class City Law did not imply such authority. The two cases the Majority references do not attempt to do what we do today, interpret the text of the MPC and ascertain the intent of the legislature to determine whether township planning boards may use temporary moratoria to accomplish coordinated development and promote the safety of its residents via up-to-date comprehensive plans.

Finally, the Board in the instant case argues that if it does not possess the implied or inherent power to enact a temporary moratorium suspending subdivision and development, developers and landowners will expedite the filing of their applications to gain approval before the enactment of the new comprehensive plan. In response, the Majority cites to *Kline,*

12. I do find it relevant that both *Kline* and *Boron Oil* were published prior to the enactment of the Statutory Construction Act of 1972, 1 Pa.C.S. §§ 1501–1991, which requires us to construe statutes liberally to give effect to their purpose and to promote justice.

I find it particularly relevant considering, "[c]ourts have construed municipal enabling statutes both strictly and liberally. A strict construction, limiting municipal power to its express provisions, favors the individual landowner. A liberal construction, making it easier to imply a power not expressly made, favors the municipality." Hostettler, *Naylor v. Township of Hellam: The Validity of Moratoria on Land Development Under the Pennsylvania Constitution,* 8 Widener J. Pub.L. 733, 738 (1999).

which stated, "although the argument is not entirely without merit, it is one which must be directed to the legislature and not to the courts. If the legislature wishes to authorize the enactment of a "temporary" or "interim" ordinance to maintain the status quo it can so provide by legislation[.]" Majority Opinion, 565 Pa. at p. 406, 773 A.2d at pp. 775–76 citing *Kline,* 68 A.2d at 189. The legislature responded to our call by creating and enacting the MPC, not only authorizing municipalities to create and adopt a comprehensive plan and regulate subdivision and land development, but also granting them the necessary tools to carry out such objectives. Because I believe that a temporary moratorium is one such tool, I respectfully dissent.