James A. NOLEN, III, Appellant

v.

NEWTOWN TOWNSHIP.

Commonwealth Court of Pennsylvania.

Argued March 2, 2004.

Decided July 30, 2004.

**706**

Marc B. Kaplin, Blue Bell, for appellant.

Thomas C. Gallagher and Bruce A. Irvine, Media, for appellant.

BEFORE: SMITH–RIBNER, Judge, and LEADBETTER, Judge, and JIULIANTE, Senior Judge.

1. Nolen questions whether the trial court erred in concluding (1) that the moratorium ordinance did not constitute a temporary taking, (2) that Nolen could have submitted a land development plan to the Township during the moratorium, (3) that during the moratorium there were a number of uses to which Nolen could have put his land, (4) that Nolen failed to demonstrate that he had distinct investment-backed expectations for the property, (5) that Nolen failed to demonstrate a negative economic impact because of the moratorium and (6) that the moratorium was reasonably related to the promotion of the public's general welfare.

2. The Township's zoning ordinance permits the following uses in an R–1 residential district: (a) single family detached dwellings on 60,000 square-foot lots, (b) public school or educational use by a school district, (c) nonprofit school, church, religious or philan-

OPINION BY Judge SMITH–RIBNER.

James A. Nolen, III appeals from the September 29, 2003 opinion and order of the Court of Common Pleas of Delaware County, which incorporated the court's June 29, 2003 opinion and order sustaining Newtown Township's preliminary objections and dismissing Nolen's petition for appointment of a board of view. Nolen contends that the Township's temporary moratorium on residential and commercial subdivision and development, in effect from November 28, 1998 to September 26, 2000, effected a *de facto* taking of his property requiring the Township to compensate him for the loss of use of the land during the moratorium.[1]

In September 1994 Nolen, a home builder, purchased two tracts of property in the Township, consisting of fifty-eight and forty-four acres of land and located in an R–1 residential zoning district.[2] At its November 23, 1998 meeting, at which Nolen was present, the Township's Board of Supervisors (Board) enacted Ordinance No.1998–4,[3] imposing a moratorium on certain sub-

thropic use when authorized by a special exception, (d) nonprofit club when authorized by a special exception, (e) tilling of soil, (f) municipal building and uses, (g) accessory uses and (h) signs.

3. Ordinance 1998–4 provides in pertinent part:

> Section II: *Residential Development*
> No parcel or tract of land located in Newtown Township, Delaware County, Pennsylvania, in any zoning district shall be subdivided into smaller parcels for residential development nor shall any residential land developments in any zoning district be permitted in Newtown Township during the term of this Ordinance.
> *Office/Commercial/Industrial/Special Use Development*
> No parcel or tract of land located in Newtown Township in any zoning district shall be

division and land development within the Township for a period of eighteen months. On May 22, 2000, the Board extended the moratorium for an additional four months. The purpose of the moratorium was to allow the Board to review and to consider changes to the Township's comprehensive plan for land use, while temporarily prohibiting new development that might be inconsistent with any changes made to the plan after the review.[4] Nolen had not submitted any subdivision or other land-use proposals to the Township prior to adoption of the Ordinance.

During the moratorium, Nolen was prohibited from subdividing and building residential developments on his two tracts of land although he would have been permitted to build one single-family home on each tract and to sell each tract as a single property. The moratorium also did not prohibit development by a school district for educational purposes, for use by a non-profit school or club or for religious or philanthropic uses. During the moratorium, the only use of Nolen's land was by a tenant farmer, who tilled part of the land and paid Nolen approximately $2000 per year. Nolen submitted development plans to the Township on September 27, 2000, the day after Ordinance 1998–4 expired.

On January 22, 1999, Nolen filed a petition for the appointment of a board of view pursuant to Section 502(e) of the Eminent Domain Code, Act of June 22, 1964 (Special Session), P.L. 84, *as amended,* 26 P.S. § 1–502(e), asserting that the moratorium substantially deprived him of the beneficial use of his property and therefore constituted a *de facto* taking that required the

payment of just compensation. The Township filed preliminary objections, and an evidentiary hearing was held on February 11, 2003 at which time the trial court heard testimony from Nolen, John Rush, a licensed real estate broker and certified appraiser testifying on behalf of Nolen, and from John Coyle, a licensed real estate broker and certified appraiser testifying on behalf of the Township.

■ By opinion and order dated June 29, 2003, the trial court sustained the Township's preliminary objections and denied Nolen's petition. The trial court initially noted that the United States Supreme Court had recently addressed issues regarding *de facto* regulatory takings in *Palazzolo v. Rhode Island,* 533 U.S. 606, 121 S.Ct. 2448, 150 L.Ed.2d 592 (2001), and *Tahoe–Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency,* 535 U.S. 302, 122 S.Ct. 1465, 152 L.Ed.2d 517 (2002), and that the Pennsylvania Supreme Court reviewed similar issues in *Machipongo Land and Coal Co., Inc. v. Commonwealth,* 569 Pa. 3, 799 A.2d 751 (2002). The trial court then determined that the proper analysis for determining whether Nolen had suffered a *de facto* taking was set forth in *Penn Central Transportation Co. v. City of New York,* 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978). The trial court concluded that Nolen had failed to demonstrate a *de facto* taking because he did not prove that he suffered a negative economic impact on account of the moratorium or show that it interfered with his investment-backed ex-

subdivided into smaller parcels for office/commercial/industrial/special use development nor shall any such development in any zoning district be permitted in Newtown Township during the term of this Ordinance.

**4.** Requirements for comprehensive plans are contained in Section 301 of the Pennsylvania

Municipalities Planning Code (MPC), Act of July 31, 1968, *as amended,* P.L. 805, 53 P.S. § 10301. Section 301(c) now requires municipalities to review plans at least every ten years.

pectations. The court further concluded that the Township had established that the moratorium was reasonably related to promotion of the public's general welfare.[5]

■■■ Before this Court, Nolen essentially argues that the trial court erred in concluding that he did not demonstrate a temporary *de facto* taking when no other substantial uses of the property were feasible, when the facts show that he had legitimate investment-backed expectations and suffered a negative economic impact and when the moratorium was not reasonably related to promotion of the public's general welfare. In *Palazzolo* the court reiterated the general test to be applied in regulatory taking cases as originally articulated in *Penn Central:*

> Where a regulation places limitations on land that fall short of eliminating all economically beneficial use, a taking nonetheless may have occurred, depending on a complex of factors including the regulation's economic effect on the landowner, the extent to which the regulation interferes with reasonable investment-backed expectations, and the character of the government action.... These inquiries are informed by the purpose of the Takings Clause, which is to prevent the government from "forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." (Citations omitted.)

*Id.,* 533 U.S. at 617–618, 121 S.Ct. 2448.

■■■ The Pennsylvania Supreme Court has recognized that a government may enact laws that have a significant impact on private property rights without having to compensate the affected landowner. *Machipongo* (citing *Miller and Son Paving, Inc. v. Plumstead Township,* 552 Pa. 652, 717 A.2d 483 (1998)). A taking does not result merely because a regulation deprives an owner of the most profitable use of his or her property; otherwise, almost all zoning restrictions could be categorized as takings in the sense that the owner is not completely free to use his or her property as desired. *Id.* Moreover, a moratorium on development imposed during the process of devising a comprehensive land-use plan does not constitute a *per se* taking of property requiring compensation; the moratorium is one of many factors to be considered. *Tahoe–Sierra Preservation Council.*

In enacting its moratorium ordinance, the Township followed similar action taken by Hellam Township in 1995 (Ordinance 1995–10), which imposed a one-year moratorium on subdivision and land development in that township to allow for review and revision of its comprehensive plan. In enacting Ordinance 1998–4, the Township also relied upon this Court's September 4, 1998 opinion in *Naylor v. Township of Hellam,* 717 A.2d 629 (Pa.Cmwlth.1998), *rev'd,* 565 Pa. 397, 773 A.2d 770 (2001), in which the Court held that under the Pennsylvania Municipalities Planning Code (MPC) the temporary suspension of development to allow for review and revision of a comprehensive plan represented a reasonable exercise of municipal power. In

---

**5.** In an eminent domain case disposed of on preliminary objections to a claim for *de facto* taking, this Court's review is limited to determining whether the trial court's findings are supported by substantial evidence in the record and whether it committed an error of law or an abuse of discretion. *Newman v. Commonwealth,* 791 A.2d 1287 (Pa.Cmwlth.2002).

The trial court is charged with resolving evidentiary conflicts, and when its factual findings are supported by substantial evidence they will not be disturbed on appeal. *In re Condemnation by Commonwealth, Department of Transportation,* 827 A.2d 544 (Pa.Cmwlth. 2003).

reversing, the Supreme Court concluded that the MPC did not authorize municipalities expressly or impliedly to suspend land development while reviewing and revising comprehensive plans. However, *Naylor* did not involve a takings claim, and in *Miller and Son Paving, Inc. v. Plumstead Township*, 552 Pa. 652, 717 A.2d 483 (1998), the Supreme Court had concluded that a zoning ordinance prohibiting certain uses, later declared invalid, did not constitute a *per se* de facto taking for the time period during which the landowner was not permitted to make use of his or her land. *Cf. Tahoe–Sierra Preservation Council* (moratorium on land development to enact more effective land-use plan did not constitute *per se de facto* taking). Although a municipality is no longer permitted to enact a moratorium on development, at the time Ordinance 1998–4 was enacted it represented a reasonable exercise of the Township's authority.

In arriving at its decision, the trial court credited the testimony of Coyle and found that during the moratorium real estate prices were rising, that mortgage rates remained low and that after expiration of the moratorium the local real estate market remained healthy. Further, Nolen feasibly could have pursued one of the other uses allowed in the R–1 zoning district. As for his investment-backed expectations, the trial court found that Nolen had not sought to develop the land for a number of years prior to the moratorium

and that at the time of its enactment he had not submitted any subdivision or other land-use proposals.[6]

In characterizing the Township's actions in enacting the moratorium, the last factor in the *Penn Central* analysis, the trial court concluded that the moratorium was reasonably related to promotion of the public's general welfare and that its enactment substantially advanced a legitimate government purpose, *i.e.*, to halt temporarily all residential and commercial development while the Township considered changes to its comprehensive land-use plan so as to avoid additional unplanned growth that might negatively impact the community. To support this conclusion, the trial court credited Coyle's opinion that the Township contained more undeveloped land than did neighboring communities, that several corporations owned large tracts of undeveloped land within the Township and that the Township was experiencing an onslaught of development. Because testimony from Nolen and Coyle constitutes substantial competent evidence to support the trial court's findings, the Court discerns no reversible error on the part of the trial court in making its findings and reaching its conclusions. Nolen may have been temporarily deprived of what was the most profitable use of the affected land, but viable land uses nonetheless remained available to him. Hence, the Township's temporary halt in development did not constitute so onerous of a

6. Regarding his investment-backed expectations, Nolen contends that the trial court erroneously focused on the fact that he had not submitted specific development plans as of the date Ordinance 1998–4 was enacted, and he asserts that the trial court should have looked to his expectations as of that date he purchased the property. In addition to noting that Nolen had not submitted development plans as of the date of the moratorium, the trial court also considered that Nolen had taken no discernible actions to develop the property in the approximately four years during which he held it prior to the effective date of the moratorium. The totality of the evidence demonstrates that while Nolen purchased the land in order to build residential subdivisions, the twenty-two month moratorium ultimately did not defeat his expectations.

burden on Nolen's use of his land under the circumstances as to constitute a taking that required compensation. The Court, therefore, affirms the order of the trial court.

### ORDER

AND NOW, this 30th day of July, 2004, the order of the Court of Common Pleas of Delaware County is affirmed.